J-S42005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JASON WALKER, | |
| Appellant | No. 3204 EDA 2013 |

Appeal from the Judgment of Sentence November 14, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012793-2012

BEFORE:  SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 28, 2015**

Appellant, Jason Walker, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on November 14, 2013, following a bench trial.  We affirm.

The trial court summarized the facts of this case as follows:

> Complainant Kendra Devine testified that on June 30, 2012, she entered into an agreement with a third party simply identified as Sharrief[1] to "scheme the bank" the following day. Ms. Devine testified her scheme required her to purchase stolen checks from a third party, and acquire ATM cards and pin numbers linked to valid bank accounts of a separate party.  She would then forge a check, deposit it into the account via ATM machine, and if the bank transferred all or a portion of the funds

---

[*]  Former Justice specially assigned to the Superior Court.

[1]  While the trial court spells "Sharief" variously as "Sharrief," the notes of testimony establish "Sharief" as the correct spelling.  N.T., 5/10/13, at 22.

to the account automatically, withdraw the amount made available. At approximately 1 pm the next day, July 1, 2012, Ms. Devine met Sharieff on the corner of 78th and Elmwood. Sharieff was accompanied by [Appellant] and the co-defendant Henry Clay.[2]

Ms. Devine entered the vehicle and the group proceeded to the TruMark Bank at 18th and Market St. Ms. Devine left the car with the ATM card and pin number of an account belonging to a female acquaintance of the co-defendant. She approached the bank alone, while the other members of her party remained a distance away. After depositing a forged check into the account, she was able to immediately withdraw $460 from the ATM, but concealed this fact from the others by hiding the money in her shoe.

The group next proceeded on foot to Chase Bank, located several blocks away, where [Appellant] had an account. Ms. Devine's attempt to withdraw money from this second account was unsuccessful. When she re-entered the vehicle, she did so voluntarily as she believed she was being brought back to her home for the day. But the car drove past the exit to Ms. Devine's home, at which time [Appellant] and his associates immediately accused Ms. Devine of withdrawing and concealing money from the TruMark ATM. From this time forward, Ms. Devine testified she was held against her will. After approximately five minutes of driving, the car came to a stop near Spring Garden Street, where Ms. Devine testified she was squeezed around the neck and hit until she conceded the money at issue was hidden in her shoe. Ms. Devine testified that after the discovery of the money she was punched by the co-defendant and [Appellant] and as a result, she got a busted lip.

The parties resumed driving and Ms. Devine began to secretly dial 9-1-1 from the cellphone she kept in her pocket. Because 9-1-1 calls are recorded, much of the subsequent exchanges between Ms. Devine and the defendants were captured on tape over the course of multiple 9-1-1 calls. Ms. Devine was later played these tapes, and identified [Appellant]

---

[2] The notes of testimony establish the co-defendant's name as Horace Clay. N.T., 5/10/13, at 1.

and his accomplices as the other voices on the 9-1-1 recordings, a transcript of which was entered into evidence as exhibit C-3. The recordings support Ms. Devine's testimony that she was told she would get home safe if the money from her second bad check was placed in [Appellant's] account by 9 pm. The group also made references to violence being done to Ms. Devine. On Page 11 of the 9-1-1 transcript the party identified as Sharieff says[,] "I'm going to say, 'yeah, I hit her but'—'yeah she robbed us.'" The co-defendant states on Page 10 of the transcript[,] "I ain't even going to put my hands on you no more."

After approximately thirty minutes, the car came to a stop at 19th Street and Montgomery Avenue. At this time, the party identified as Sharieff exited the vehicle and entered a home on the corner of the block. Ms. Devine testified that Sharieff returned with a gun. This testimony was supported by the transcript of the 9-1-1 calls, which recorded Ms. Devine's exclamation[,] "You just got a gun!" and Sharieff's response[,] "I'm definitely strapped. Four pound and everything." Ms. Devine testified that "strapped" refers to carrying a gun and "four pound" means .45 semiautomatic handgun. [Appellant] subsequently advised Ms. Devine multiple times that her safe return home hinged on the successful transfer of money to [Appellant's] account. "If that money on there[,] I'm going to make sure you get home safe;" "If that money ain't on there then you lost out here."

After roughly fifteen to twenty minutes stopped at 19th Street and Montgomery Avenue, Sergeant Vincent Morris of the Philadelphia Police Department arrived on the scene in response to a 9-1-1 report of a woman screaming. Sergeant Morris approached the group to check if they were okay. At this time Ms. Devine mouthed the words "help me." Investigating further, Sergeant Morris testified Ms. Devine had a bloody lip and was shaking. In response, Sergeant Morris detained [Appellant] and the other members of his group.

Trial Court Opinion, 7/30/14, at 5–7 (internal citations to record omitted).

Appellant was arrested on July 1, 2012, and charged with robbery, kidnapping, conspiracy, possessing an instrument of crime ("PIC"), terroristic threats, simple assault, and false imprisonment. Appellant waived

a jury trial and proceeded to a bench trial on May 10, 2013. The trial court found Appellant not guilty of robbery, kidnapping, conspiracy, and PIC, and guilty of terroristic threats, simple assault, and false imprisonment. On August 8, 2013, the trial court sentenced Appellant to one to five years of imprisonment for terroristic threats and consecutive terms of one to two years each for simple assault and false imprisonment, for an aggregate sentence of three to nine years.

On August 14, 2013, Appellant filed a post-sentence motion, which the trial court granted in part and denied in part on November 14, 2013. N.T., 11/14/13, at 18. The trial court denied Appellant's claims relating to the sufficiency and weight of the evidence but amended Appellant's sentence for terroristic threats to one to two years, for a new aggregate sentence of three to six years of imprisonment. *Id*. Appellant filed a notice of appeal on November 18, 2013. Pursuant to trial court order, Appellant filed a timely statement pursuant Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

   I.   THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A FINDING OF GUILTY BEYOND A REASONABLE DOUBT ON THE CHARGES OF TERRORISTIC THREATS AND FALSE IMPRISONMENT.

   II.   THE FINDING OF GUILTY ON THE CHARGES OF THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A VERDICT OF GUILT BEYOND A REASONABLE DOUBT ON THE CHARGES OF SIMPLE ASSAULT, TERRORISTIC THREATS AND FALSE IMPRISONMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

- 4 -

Appellant's Brief at 6 (verbatim).

Appellant's first issue relates to the sufficiency of the evidence. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119 (Pa. 2013). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Tejada*, 107 A.3d 788, 792–793 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Vogelsong*, 90 A.3d 717 (Pa. Super. 2014), *appeal denied*, 102 A.3d 985 (Pa. 2014). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, ___ A.3d ___, 2015 PA Super 148 (filed July 7, 2015).

The trial court held that Appellant's sufficiency-of-the-evidence claim was too vague to permit the trial court to conduct meaningful review. Trial Court Opinion, 7/30/14, at 3–4. In his Pa.R.A.P. 1925(b) statement, Appellant merely averred that "[t]he evidence was insufficient to sustain a finding of guilty beyond a reasonable doubt on the charges of terroristic

- 5 -

threats and false imprisonment." Pa.R.A.P. 1925(b) Statement, 11/26/13, at 1. The trial court determined that Appellant's sufficiency-of-the-evidence claim was waived due to the vagueness of the Rule 1925 statement and its failure to identify any argument, thereby requiring the trial court "to guess" as to the basis for the issue. Trial Court Opinion, 7/30/14, at 4.

Rule 1925 requires that an appellant "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues[.]" Pa.R.A.P. 1925(b)(4)(ii). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Allshouse*, 969 A.2d 1236, 1239 (Pa. Super. 2009) ("When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.").

Specifically, we have stated that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). The Court further explained that "[s]uch specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains different elements that the Commonwealth must prove beyond a reasonable doubt." *Id*. at 344. Failure to identify what specific elements

the Commonwealth failed to prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for appellate review. *Id*.

Here, Appellant was convicted of three different crimes, each of which involved different elements. Appellant's 1925(b) statement questioned whether the Commonwealth put forth sufficient proof to support two of his three convictions, but failed to state with specificity any particular elements of the crimes the Commonwealth failed to prove. Thus, the trial court was forced to speculate about the possible errors because Appellant did not identify them. Accordingly, Appellant's sufficiency claim is waived. ***See Commonwealth v. Veon***, 109 A.3d 754 (Pa. Super. 2015) (sufficiency-of-evidence issue waived where Pa.R.A.P. 1925(b) statement "is sweeping and generalized [in that it] maintains that the evidence was insufficient, but utterly fails to pinpoint any . . . specific element of [the appellant's] convicted crimes that lacked sufficient evidence") (citing ***Garland***, 63 A.3d 339).

Furthermore, even if not waived, Appellant's sufficiency claim would afford him no relief. In his appellate brief, Appellant lists specific reasons why he believes the evidence was insufficient to sustain the verdict. Appellant's Brief at 13–16. He bases his sufficiency argument relating to false imprisonment on the contention that the Commonwealth failed to prove that Appellant restrained Ms. Devine's liberty. Appellant's Brief at 13.

Relating to his conviction for terroristic threats, Appellant maintains the Commonwealth failed to establish that he made any threats to Ms. Devine. *Id*. at 14.

In pertinent part, the Crimes Code provides that a person commits false imprisonment, a misdemeanor of the second degree, "if he knowingly restrains another unlawfully so as to interfere substantially with his liberty." 18 Pa.C.S. § 2903(a). Furthermore, "A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S. § 306(b)(3). A person is an accomplice if he "aids or agrees or attempts to aid such other person in planning or committing" an offense. 18 Pa.C.S. § 306(c)(2).

The trial court, addressing the merits in the alternative, stated:

> The facts found at trial clearly fit the elements of False Imprisonment as Ms. Devine was held against her will for over half an hour, and transported several miles away. First, 19th and Montgomery Avenue, the location where Sergeant Morris found the complainant, is more than three miles from the location of the Chase Bank ATM, where Ms. Devine testified she was first held against her will. Additionally, the 9-1-1 tapes capturing this trip span more than thirty minutes. Further, the transcript of the 9-1-1 calls reveal[s] the parties were fully aware they were keeping Ms. Devine in the car against her will. Captured on the transcript are several statements where Ms. Devine was told she would get home safe[ly] if the money from her second check was placed in the account by 9 pm. (N.T., 5/10/13 pg. 62).

Trial Court Opinion, 7/30/14, at 9.

Appellant suggests that as a backseat passenger, he was not in control of the vehicle and "did nothing in any way to restrain Devine." Appellant's

Brief at 13. Appellant fails to note that as co-defendant Horace Clay drove the vehicle, Appellant was positioned in the back seat of the vehicle strong-arming the victim and hitting her. N.T., 5/10/13, at 38. While the men were driving Ms. Devine and assuring her that they would return her to the pick-up location, they drove past the exit whereupon Appellant put the victim "in a headlock" and choked her. *Id*. at 34. This restraint on Ms. Devine's liberty is sufficient to prove false imprisonment. ***See Commonwealth v. Belgrave***, 391 A.2d 662 (Pa. Super. 1978) (victim's wife's testimony that she saw her husband being assaulted by several men in back seat of car, including defendant, and that car was then driven away with her husband inside it and still being assaulted, was sufficient to prove defendant's guilt of false imprisonment); ***In re T.G.***, 836 A.2d 1003, 1009 (Pa. Super. 2003) (evidence that the appellant grabbed the victim by her arm, took her inside a house with the door closed, pulled her hair, and would not permit her to leave was sufficient evidence of false imprisonment). Thus, we would find the evidence sufficient to prove false imprisonment.

The crime of terroristic threats is defined as:

**(a) Offense defined.--**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

  (1) commit any crime of violence with intent to terrorize another;

  (2) cause evacuation of a building, place of assembly or facility of public transportation; or

(3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706(a). The trial court found Appellant guilty of subsection (a)(1). Trial Court Opinion, 7/30/14, at 9. Referring to the statement from the 9-1-1 recordings,[3] the trial court noted that there "were clearly threats of harm . . . to Ms. Devine if she did not get them money by a set deadline." *Id*. Males in the vehicle are heard stating, "**If** that money on [sic] there then I'm gonna make sure you get home safe. . . . If that money ain't on [sic] there **then you lost out here**." N.T., 5/10/13, at 116. Appellant and his co-horts beat Ms. Devine in the back seat of the car while the vehicle was driven around for thirty minutes, threatening her safety unless she produced the money. *Id*. at 36–39. When they removed her from the vehicle, Appellant and the other two men surrounded her, telling her she would not be harmed if she provided the money by 9:00 p.m. *Id*. at 64. When Sergeant Morris came upon the group as a result of the 9-1-1 calls,

---

[3] Both Appellant and the Commonwealth, in addition to the trial court, refer to a transcript from the 9-1-1 tapes, which was admitted into evidence at trial. N.T., 5/10/13, at 63, 134. That transcript is not in the record certified to us on appeal. The appellant "has the duty to ensure that the record is complete for purposes of appellate review, *Commonwealth v. Griffin*, 65 A.3d 932, 936 (Pa. Super. 2013)," and therefore, we could have found this issue waived on this basis as well. *Commonwealth v. Gonzalez*, 109 A.3d 711, 725 (Pa. Super. 2015). We rely on the testimony relating to the 9-1-1 transcript in addressing this portion of the sufficiency claim in the alternative.

Ms. Devine, who was shaking and had a bloody lip, mouthed the words,

"Help me." *Id*. at 125–126.

In addressing the sufficiency of the evidence supporting a conviction of

terroristic threats, this Court has stated as follows:

> The harm sought to be avoided is the psychological distress that
> follows an invasion of the victim's sense of personal security.
> See [*Commonwealth v. Tizer*, 454 Pa.Super. 1, 684 A.2d 597,
> 600 (1996)] *id*.  Consequently, "neither the defendant's ability
> to carry out the threat nor the victim's belief that it will be
> carried out is an essential element of the crime." *Id*.; *see also*
> *Commonwealth v. Hudgens*, 400 Pa.Super. 79, 582 A.2d
> 1352, 1358 (1990).  Similarly, "it is unnecessary for an
> individual to specifically articulate the crime of violence which he
> or she intends to commit where the type of crime may be
> inferred from the nature of the statement and the context and
> circumstances surrounding the utterance of the statement." *Id*.
> Thus, "a direct communication between the defendant and the
> victim is not required to establish the crime." *In re L.A.*, 853
> A.2d 388, 392 (Pa. Super. 2004).

*Commonwealth v. Sinnott*, 976 A.2d 1184, 1188 (Pa. Super. 2009), *aff'd*

*in part, rev'd in part on other grounds*, 30 A.3d 1105 (Pa. 2011).  We find

the evidence of record sufficient to support the conviction for terroristic

threats.

Appellant also challenges the weight of the evidence supporting the

verdict.  The trial court will award a new trial only when the jury's verdict is

so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Ferguson*, 107 A.3d 206, 213 (Pa. Super. 2015).  "In

determining whether this standard has been met, appellate review is limited

to whether the trial judge's discretion was properly exercised, and relief will

be granted only where the facts and inferences of record disclose a palpable abuse of discretion." ***Commonwealth v. Diggs***, 949 A.2d 873, 879 (Pa. 2008). Thus, "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Rivera***, 983 A.2d 1211, 1225 (Pa. 2009).

Initially, we note that while the weight claim was preserved in Appellant's post-sentence motion, our discussion regarding the vagueness of the Rule 1925(b) statement is applicable, in whole, to this issue as well. Thus, we find the weight-of-the-evidence issue waived.

Even if not waived, the issue has no merit. In short, Appellant's weight claim contends that Ms. Devine was an incredible witness. This Court has stated that a new trial is not warranted based on a mere assertion of "a reassessment of the credibility of witnesses." ***Gonzalez***, 109 A.3d at 724 (citing ***Commonwealth v. Bruce***, 916 A.2d 657, 665 (Pa. Super. 2007)). The trial court, as finder of facts, credited Ms. Devine's testimony. After careful review, we would not find the verdicts so contrary to the evidence as to shock one's sense of justice.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2015