J-S96028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| THOMAS BEAL | |
| Appellant | No. 899 WDA 2016 |

Appeal from the Judgment of Sentence May 31, 2016
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0002208-2015

BEFORE:  BENDER, P.J.E., BOWES, J., AND SOLANO, J.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 10, 2017**

Thomas Beal appeals from the judgment of sentence of forty-six to 240 months incarceration imposed following his convictions for burglary, criminal trespass, and criminal mischief.  We affirm.

We adopt the trial court's cogent recitation of the facts set forth in its Pa.R.A.P. 1925(a) opinion.

> Doris Pastorius has been a baker at Pechin Superfoods Market (hereinafter "Pechin's") for twenty-seven years.  On November 3, 2015, Pastorius, along with two other bakers, Steve Borek and Andy Pletcher, were scheduled to start their work shift at two o'clock a.m.  On that morning, Pastorius and Pletcher arrived at Pechin's around 1:50 a.m.  They entered Pechin's through the front door and went to the bakery department.
>
> Approximately forty-five minutes into her shift, Pastorius noticed a rope ladder hanging down from the ceiling through a HVAC unit.  After observing this oddity, Pastorius alerted Borek and Stanley Angel, a security guard employed by Pechin's.  Angel walked into the market and immediately saw the rope ladder

hanging from the ceiling. Angel testified that after he came into the market, he went over to the rope ladder and started to hear movement above. At that time, a person started to climb down the ladder. Pastorius testified that when she looked up, she saw two feet. Angel testified that a man with boots, jeans, and a grey hooded sweatshirt kicked out the grate from the HVAC unit and started to climb down the ladder. The individual then suddenly climbed back up the ladder. Immediately following that, Pastorius called Don D'Amico, the owner of Pechin's and Angel called the police.

The police arrived on scene a few minutes after the call. Troopers Ryan Butka and Shane Reaghard of the Pennsylvania State Police approached the back of the building. They climbed up on the roof and began their search. They first found an open air conditioning unit with a rope ladder hanging down into the building. Continuing on with their search, the troopers got to the opposite end of the building. Trooper Butka found Appellant under an air conditioning unit in an "army crawl" position.

Trooper Butka identified himself as the police, pointed his weapon and informed Appellant to come out from underneath the unit. When Trooper Butka asked Appellant what he was doing up on the roof, Appellant replied he was there sleeping. Appellant was then placed in handcuffs and the troopers, along with the local fire department, assisted Appellant off of the roof.

Trial Court Opinion, 8/15/16, at 3-4 (citations to transcript omitted).

We add the following pertinent facts. Mr. D'Amico took two photographs while police arrested Appellant, two of which the Commonwealth introduced. They depicted authorities assisting Appellant off the roof. Appellant's clothing is plainly visible in the photographs, which depict him wearing jeans, gloves, a gray hooded sweatshirt, and brown boots. Second, Pechin's is one of several properties in the Laurel Mall complex, with all businesses sharing a common roof. Third, Appellant was

located at the far end of the building, approximately 100 to 150 yards from the burglar's point of entry.

Appellant filed timely post-sentence motions for relief and a notice of appeal. The trial court and Appellant complied with the procedural requirements of Pa.R.A.P. 1925, and the matter is now ready for our review. Appellant presents the following issues.

I. Whether the evidence was sufficient to support the defendant's conviction of criminal trespass and burglary?

II. Whether the jury verdict was against the weight of the evidence?

III. Did the trial court err in admitting the photographs of the defendant after he was taken into custody on the roof of the Laurel Mall?

Appellant's brief at 7.

Appellant's first claim concerns the sufficiency of the evidence. Whether the evidence was sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa.Super. 2016) (citation omitted). In conducting our inquiry, we

> examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

***Commonwealth v. Doughty***, 126 A.3d 951, 958 (Pa. 2015).

The trial court deemed this issue waived and, in the alternative, meritless. With respect to waiver, Appellant's concise statement of matters complained of on appeal simply stated that the convictions for criminal trespass and burglary were insufficient. Concise Statement, 7/5/16, at unnumbered 1. As we stated in **Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa.Super. 2013), to preserve a challenge to the sufficiency of the evidence on appeal the concise statement "must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." **Id.** at 344. Appellant's boilerplate statement failed to do so. Therefore, we could find the issue waived.

However, since the claim presents a question of law that the court readily apprehended, we shall address it. **See Commonwealth v. Laboy**, 936 A.2d 1058 (Pa. 2007) (less strict waiver approach where case was not complex and trial court addressed claim). Instantly, Appellant does not argue that the Commonwealth failed to establish any particular element of the crimes; instead, he posits that the Commonwealth did not prove identity. His argument implicates the well-established rule that, while the Commonwealth may sustain its burden with wholly circumstantial evidence, mere presence at a crime scene alone cannot justify a conviction. In support, Appellant points to the absence of any tools, instruments, or fingerprints, and highlights that the roof in question encompassed several separate businesses.

- 4 -

Numerous cases have addressed the sufficiency of evidence when a burglar enters a building through a roof or other means not readily accessible to the public. Cases where there is strong circumstantial evidence of guilt pose little difficulty. *See Commonwealth v. Viall*, 420 A.2d 710 (Pa.Super. 1980) (after hearing footsteps on roof of burglarized building, officer observed appellant climbing down from roof).

Less direct evidence of concealment or flight has also been deemed relevant in establishing more than mere presence. In *Commonwealth v. Jones*, 444 A.2d 729 (Pa.Super. 1982), police responded to a laundromat for a reported burglary in progress. When Officer Thomas Christy arrived, a number of police officers were already on scene. Officer Christy climbed to the roof of a nearby building and observed several individuals running, including Jones, who refused an order to stop. Shortly thereafter, Jones was found in an alleyway with no incriminating items on his person. *Id*. at 731. We held that the evidence was sufficient to convict:

> The evidence in the instant case, although circumstantial, was sufficient to sustain the convictions. Shortly after midnight, appellant was seen running across the roof of a building adjacent to a laundromat to which access had been gained through the roof. He was taken into custody by police while attempting to conceal himself in the doorway opening onto a neighboring alley. Inside the premises an attempt had been made to remove money from coin-operated laundry machines. These circumstances had greater probative value than mere presence at the scene of a crime. They were sufficient to enable a jury to infer that entry had been effected to commit the crime of theft and that appellant was a participant. Moreover, an attempt to

flee or conceal oneself from the police is an additional circumstance from which guilt can be inferred.

*Id*. at 731–32. Hence, while Jones was not directly observed running from the burglarized building in response to the police investigation, the circumstantial evidence sufficed to affirm the convictions.

At the other end of the spectrum is ***Commonwealth v. Weaver***, 455 A.2d 1199 (Pa.Super. 1982). Therein, an officer responded to a reported burglary at a jewelry store and observed two males inside. *Id*. at 1200-01. Since all entrances were secured, officers checked the roof and discovered a hole. The two perpetrators, both white juveniles, were quickly apprehended and both possessed merchandise from the store. Weaver, a twenty-seven-year-old black male, was found by police on the roof of another establishment two buildings away from the jewelry store. This building was easily accessible from the jewelry store as the buildings were separated by two-foot high partitions. Weaver was located approximately fifty feet from the hole in the roof, in a fetal position, with no merchandise or incriminating tools. *Id*. at 1201. He was convicted of, *inter alia*, burglary and conspiracy. We discharged all convictions on sufficiency grounds.

> While the discovery by police of a man just two buildings away from the site of a breaking and entering at 12:20 a.m. may conjure up the highest degree of suspicion as to his involvement in the criminal incident, without more, this Court is precluded from connecting appellant with the burglary of the nearby jewelry store unless the connection or association of appellant with those apprehended is established beyond a reasonable doubt insofar as the crime is concerned.

*Id*. at 1201.  The majority opinion in *Weaver* did not discuss *Jones*, but did note that Weaver made no attempt to flee.

Returning to the present circumstances, the facts are superficially similar to *Weaver* as both cases involve men who were located a short distance from the means of access on the common roof of a building.  Like the appellant in *Weaver*, no one observed Appellant concealing himself or fleeing the scene, nor did anyone see the burglar's face.  However, we find that sufficient additional facts link Appellant to the burglary.  Most significantly, Appellant's clothing matched the description of the man Mr. Angel observed descending the steps.  Mr. Angel testified that upon seeing legs, he "used some words I shouldn't have, but I said come on down . . . I saw boots, I saw jeans, I saw gray hoodie, and then all of a sudden, going back up the ladder."  N.T., 5/2-3/16, at 62-63.  Appellant suggested on cross-examination that Mr. Angel's description was tainted by his later observation of Appellant being escorted from the roof.  *Id*. at 69.  Mr. Angel disagreed.  *Id*.  While Appellant maintains that this testimony is not believable as a matter of weight, see *infra*, the jury was free to credit or discredit the testimony.

Moreover, *Weaver* is further distinguishable in that the case stressed a lack of Weaver's connection to the crime as a matter of accomplice liability.  The Commonwealth had failed to establish a "connection or association . . . **with those apprehended**[.]"  *Id*. at 1201 (emphasis

added).  Herein, all eyewitnesses to this crime described one suspect and no one else was in the immediate vicinity.  While Appellant informed the arresting officer that he had been sleeping on the roof, the jury was entitled to credit or discredit this explanation.  *See Commonwealth v. Scott*, 146 A.3d 775 (Pa.Super. 2016) (appellant claimed mere presence near a burglarized building; offered alternative explanation for presence of his DNA on discarded cigarette).  Appellant's explanation that he was on the roof to sleep was rejected by the jury.  Drawing all reasonable inferences in favor of the Commonwealth, as we must, these additional facts establish that Appellant's conviction was not based on mere presence.

Appellant's second claim attacks the weight of the evidence.  This issue was raised in a post-sentence motion and preserved for review. *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012).  Our standard of review is well-settled. We review the exercise of the trial court's discretion in ruling on the weight claim, not the underlying question of whether the verdict is against the weight of the evidence.  *Commonwealth v. Leatherby*, 116 A.3d 73, 82 (Pa.Super. 2015) (citing *Commonwealth v. Brown*, 23 A.3d 544, 558 (Pa.Super. 2011)).  "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice."  *Id*. at 82.

To overcome this heavy burden, Appellant highlights that Mr. Angel's testimony contradicted Ms. Pastorius's testimony. Specifically, Appellant notes that she saw only the burglar's feet, while Mr. Angel stated he observed the burglar's entire body except for his head. In addressing this claim, the trial court acknowledged that the testimony was inconsistent[1] but found that the verdict did not shock its sense of justice. We have no license to override that determination. "Of equal importance is the precept that, 'The finder of fact . . . exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence.'" *Commonwealth v. Konias*, 136 A.3d 1014, 1023 (Pa.Super. 2016) (quoting *Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011)).

Appellant's third issue faults the trial court for permitting the admission of two photographs taken by Mr. D'Amico. We employ an abuse of discretion standard in reviewing the admission of photographs. *Commonwealth v. Haney*, 131 A.3d 24, 37 (Pa. 2015). A trial court applies a two-part test to determine if the photograph is inflammatory, and, if so, whether the photograph has essential evidentiary value. *See Commonwealth v. Funk*, 29 A.3d 28, 33 (Pa.Super. 2011) (*en banc*). The usual context for this analysis is photographs of crime scenes, autopsies, or

_____

[1] We note that Ms. Pastorius testified that once she saw two feet she "got scared and . . . moved away because Stan [Angel] and Steve [Borek] were standing there." N.T., 5/2-3/16, at 18-19.

other representations of the aftermath of violent crimes. "This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant." *Id*. (citation omitted).

We are not presented with an inflammatory photograph in that sense. Instead, Appellant maintains that the photograph is prejudicial, which implicates the familiar principle that "any evidence, including demonstrative . . . involves a weighing of the probative value versus prejudicial effect. We have held that the trial court must decide first if the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect." *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006).

Applying this test, Appellant does not claim that the photos were irrelevant. Rather, he maintains that their introduction prejudiced him insofar as they necessarily conveyed guilt. "Appellant's hands are behind his back, likely handcuffed, and the trooper is holding Appellant's upper right arm. Permitting the jury to see these images removed Appellant's garb of innocence." Appellant's brief at 15-16.

It is well-settled "that a fair trial, without prejudice, requires defendants to appear free from shackles or other physical restraints." *Commonwealth v. Pezzeca*, 749 A.2d 968, 970 (Pa.Super. 2000). *See Deck v. Missouri*, 544 U.S. 622, 630 (2005) (identifying reasons for presumptively barring physical restraints at trial). Appellant assumes that

- 10 -

these principles apply equally to depictions of a defendant outside the courtroom.[2] Assuming *arguendo* that Appellant is correct, we find that the photographs do not clearly show any form of restraint. Having independently reviewed the photographs, we agree with the trial court that the first photograph, which shows the trooper walking Appellant to the fire truck ladder, merely suggests that Appellant's hands are restrained since his hands are behind his back. Additionally, the second photograph, which shows Appellant's left arm grasping the fire truck's ladder, clearly shows his left arm and wrist unencumbered by any restraint. Appellant was not shown in handcuffs and we therefore agree with the trial court that the prejudicial effect of these photographs is non-existent.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2017

_____

[2] There is reason to doubt this proposition. **See Holbrook v. Flynn**, 475 U.S. 560, 567 (1986) ("[J]urors are quite aware that the defendant appearing before them did not arrive there by choice or happenstance[.]").

- 11 -