**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Khashion M. GARLAND, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 14, 2013.

Filed March 1, 2013.

---

Laurence A. Narcisi, III, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., GANTMAN, J., and LAZARUS, J.

## OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following Appellant's conviction by a jury on the charges of murder in the third degree,[1] carrying an unregistered firearm,[2] unlawfully carrying a firearm on public streets or public property in Philadelphia,[3] and possession of an instrument of crime (PIC).[4] Upon our review, we affirm.

The relevant facts and procedural history are as follows: At approximately 7:30 p.m. on October 4, 2008, Nafis Golphin, Marqule Colbert, Jamil Ransom (Mil), and several other people were gathered on the front steps of a friend's house on the 1300 block of Pratt Street in Philadelphia when a car being driven by Appellant and Ronald Bradley drove past, skidded around the corner, and then abruptly stopped. Appellant and Mr. Bradley approached the group brandishing firearms. Appellant rambled a few threatening words at Mr. Ransom, and in response, Mr. Ransom ran.

Appellant and Mr. Bradley both fired their guns, first shooting at Mr. Ransom and then spraying bullets into the group towards those who were running. Mr. Colbert was shot four times, twice in his buttocks, once in the foot, and the fourth and fatal shot entered again in his buttocks and travelled across his body, hitting his major organs before lodging in his shoulder.

Appellant and Mr. Bradley fled the scene together in the same vehicle in which they had arrived. Mr. Golphin later identified Appellant from a photographic array. At the crime scene, fourteen bullet casings were recovered: Seven of the bullet casings were from a .40 caliber semiautomatic handgun; and, seven were from a .45 caliber semiautomatic handgun. The same .40 caliber bullets that were at the crime scene were found in Mr. Colbert's body. When Mr. Bradley was arrested, police found a loaded .45 caliber semiautomatic handgun under his mattress.

Veteran Police Officer Galiczynski testified that, on March 13, 2009, he and fellow veteran Police Officer Perry were on duty and driving on the 5300 block of Oakland Street at 12:50 p.m. in full uniform and in a marked police car when they received a radio dispatch to report to an armed robbery in progress. As the officers drove by the crime scene, they saw Appellant riding a bicycle very fast in the opposite direction of the crime scene. Appellant looked startled when he saw the officers and, based on their observations, the officers turned their vehicle around and began to follow Appellant. The officers activated the police cruiser's lights and sirens; however, Appellant did not stop. Officer Galiczynski followed on foot while Officer Perry stayed in the car and attempted to cut off Appellant as he ran up a driveway. The pursuit continued through a neighborhood with Office Galiczynski continually asking Appellant to show him his hands. Appellant eventually showed his hands, taking a gun from his waistband and dropping it. Finally, the officers apprehended Appellant and recovered a stolen loaded .380 semi-automatic black and silver gun.

Upon his arrest, Appellant gave the name of "Brandon Garland." One of the apprehending officers recognized the last

---

**1.** 18 Pa.C.S.A. § 2502(c).

**2.** 18 Pa.C.S.A. § 6106.

**3.** 18 Pa.C.S.A. § 6108.

**4.** 18 Pa.C.S.A. § 907.

name of "Garland" as belonging to a person wanted in connection with a homicide. After confirming Appellant's real identity, the officers arrested Appellant in connection with the October 4, 2008 homicide and took him to the police station for questioning.

That evening, after the police gave Appellant his *Miranda*[5] warnings and informed him that they wanted to question him about the murder of Mr. Colbert, Appellant, who appeared to be coherent, cooperative, and not under the influence of drugs or alcohol, gave the police a statement admitting he was involved in the shooting. While Appellant admitted he shot into the group, he indicated he intentionally missed hitting anyone and indicated Mr. Bradley was the person who "had a problem" with Mr. Ransom.

Appellant subsequently filed a pre-trial motion seeking to suppress the statement, which he gave to the police, as well as the firearm, which was recovered by the police when he was arrested. On September 14, 2010, Appellant's pre-trial suppression hearing was held, and the trial court denied Appellant's suppression motion.

Appellant proceeded to a jury trial, at the conclusion of which he was convicted on the charges as indicated *supra* in connection with the October 4, 2008 shooting. On December 17, 2010, Appellant was sentenced to an aggregate of twenty-two years and one-half to forty-five years' incarceration, and on December 27, 2010, Appellant filed a timely post-sentence motion. The trial court denied the post-sentence motion on December 29, 2010, and this timely, counseled appeal followed.

On June 14, 2011, the trial court ordered Appellant to file a Pa.R.A.P.1925(b) statement, and Appellant filed his Pa.R.A.P. 1925(b) statement on July 25, 2011. In Appellant's statement, he raised two issues: (1) the trial court committed error when it failed to suppress Appellant's statement and (2) the evidence was legally insufficient to support his convictions. On November 16, 2011, the trial court issued a Pa.R.A.P.1925(a) opinion.

■ Appellant's first argument is that the trial court erred in denying his motion to suppress the firearm, which he discarded as he was fleeing from police on the night he was arrested. However, we find this claim to be waived since Appellant failed to present the specific issue in his court-ordered Pa.R.A.P. 1925(b) statement.[6] *Commonwealth v. Hill,* 609 Pa. 410, 16 A.3d 484 (2011) (holding claims not raised in a court-ordered Pa.R.A.P. 1925(b) statement will be deemed waived).

Furthermore, we note Appellant failed to include this specific claim in his "Statement of Questions Presented." *See* Appellant's Brief at 9. Thus, we deem this claim to be waived on this basis, as well. *See* Pa.R.A.P. 2116(a) (indicating no questions will be considered unless they are stated in the statement of questions involved or are fairly suggested thereby).

Appellant's next argument is the trial court erred in denying his motion to suppress his statement, which he made to the police following his arrest. Appellant specifically argues that his statement was involuntary because there was a delay of over eight hours between his arrest and when he gave the statement and that he

---

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. We note the contents of the trial court's Pa.R.A.P. 1925(b) order substantially meets the requirements of Pa.R.A.P. 1925(b)(3), and the trial court provided proper notice of the order to Appellant.

was placed in a small room for much of the time.

■ We first note that our standard of review for "addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions from those facts are correct." *Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125, 1148 (2009) (internal citations omitted).

> When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions draw therefrom are in error.

*Id.*

With regard to the voluntariness of a statement, our Supreme Court has explained:

> [V]oluntary statements by an accused, given more than six hours after arrest when the accused has not been arraigned, are no longer inadmissible *per se.* Rather, regardless of the time of their making, courts must consider the totality of the circumstances surrounding the confession. In reviewing the totality of the circumstances, it must be considered whether, under the circumstances, the confession was freely and voluntarily made. Various other factors to consider include the interrogation's duration and means, the defendant's physical and mental state, the detention conditions, police attitude during the interrogation, and any other factors indicating whether coercion was used.

*Commonwealth v. Housman,* 604 Pa. 596, 986 A.2d 822, 840 (2009) (internal citations omitted).

■ Here, Appellant's contention of involuntariness relies primarily on the length of time he was alone between his arrest and when he gave his statement. Appellant asserts that because of the lack of human contact he was coerced into confessing. However, as indicated, the appellate courts have expressly rejected the position that the length of time is determinative. *Commonwealth v. Perez,* 577 Pa. 360, 845 A.2d 779 (2004).

Additionally, we note that, in ruling that Appellant's statement was voluntarily made, the trial court made the following findings of fact in open court:

> On 3/13/09, [Appellant] was brought into Homicide by police. This detective along with his partner . . . took a statement from [Appellant] at 9:00 p.m. that evening. The statement took approximately an hour-and-a-half to an hour and 45 minutes. [Appellant] appeared consistent and oriented is what the detective said as to time, date, and place.

> [Appellant] did not appear to be under [the influence of] drugs or alcohol. [Appellant] could read and write. [Appellant's] statement was taken verbatim and handwritten. [Appellant] was given his warnings, he signed across the front page of the warnings . . . [Appellant] was not handcuffed, not shackled. [Appellant], after he gave the statement, was giv[en] the opportunity to review it, signed each page of the statement, made no corrections.

> The detective testified [Appellant] was not threatened, not promised anything. [Appellant] was 19 years old at the time his statement was taken. And he does not personally recollect any bathroom breaks, you know, food, breaks for [Appellant], but that is the policy in Homi-

**344**

cide. And this detective did not know why [Appellant] [or how Appellant] was brought into the Homicide Unit in the first place. Meaning, he didn't know the history of why [Appellant] was stopped.

This detective testified that he's not aware of any other questioning by any other detective of [Appellant].

\* \* \*

As far as the statement is concerned there's nothing on the record to indicate that this is anything but a knowing, intelligent, and voluntary statement. There's not an iota of evidence to indicate any coercion. [Appellant's] statement was taken within five hours from the time he was brought into Homicide. There's nothing to indicate it was anything other than a routine statement tak[en] by Homicide detectives on this record.

N.T. 9/14/10 at 48–51.

As is evident, even though the appellate courts have held that length of time is not determinative, we note the trial court found that Appellant's statement was taken within five hours from the time he was brought to the police station. *See* N.T. 9/14/10 at 51. The record supports the trial court's finding. *See Ligons, supra.* In any event, as the trial court found, under the totality of the circumstances, it is clear that Appellant's confession was freely and voluntarily made. *See Housman, supra.* Therefore, the trial court did not err in denying Appellant's motion to suppress his statement on this basis.

Appellant's next argument is the evidence was insufficient to support his conviction for third-degree murder.[7]

▆▆▆ Initially, we note we agree with the trial court that Appellant has waived

his sufficiency claim. *See* Trial Court Opinion, 11/16/11 at 2. Specifically, Appellant's Pa.R.A.P.1925(b) statement simply provided a generic statement stating "[t]he evidence was legally insufficient to support the convictions." *See* Appellant's "Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P.1925(b)," 7/25/11. In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. *Commonwealth v. Gibbs,* 981 A.2d 274, 281 (Pa.Super.2009), *appeal denied,* 607 Pa. 690, 3 A.3d 670 (2010). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* at 281 (citation omitted). Here, as is evident, Appellant not only failed to specify which elements he was challenging in his Rule 1925(b) statement, he also failed to specify which conviction he was challenging. Thus, we find Appellant's sufficiency claim waived on this basis. *See Gibbs, supra.*

However, even assuming Appellant's sufficiency claim has not been waived, we find it is meritless.

"The standard we apply in reviewing sufficiency of the evidence is whether in viewing all the evidence admitted at trial in light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. O'Brien,* 939 A.2d 912, 913 (Pa.Super.2007) (internal citation omitted). "Any doubts concerning an appellant's guilt are to be resolved by the trier of fact

---

**7.** Appellant presented no argument in his brief as to the sufficiency of the evidence

regarding his conviction on the remaining charges.

345

unless the evidence was so weak and inconclusive that no probability of fact could be drawn therefrom." *Commonwealth v. West,* 937 A.2d 516, 523 (Pa.Super.2007). "The trier of fact while passing upon credibility of witnesses ... is free to believe all, part or none of the evidence." *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001) (internal citations omitted). Additionally, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Perez,* 931 A.2d 703, 707 (Pa.Super.2007) (internal citations omitted).

Third degree murder is defined as all other murders that are not first degree or second degree murder. 18 Pa.C.S.A. § 2502(c).

> Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice. Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty. Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body. Further, malice may be inferred after considering the totality of the circumstances.

*Commonwealth v. Truong,* 36 A.3d 592, 597–598 (Pa.Super.2012) (quotations, quotation marks, citations omitted).

■ Appellant's sufficiency argument is based entirely on his own self-serving version of what occurred. That is, Appellant told the police that it was Mr. Bradley who had been the provoker and that he (Appellant) purposefully did not shoot anyone. However, Mr. Golphin testified at trial that Appellant was the one threatening and provoking Mr. Ransom. Mr. Golphin also testified that Appellant was shooting at

Mr. Ransom and at anyone that he could see. N.T., 9/15/10 at 21, 46–47. Further, the deadly bullets that were found in Mr. Colbert were from a .40 Caliber gun, but the gun that was found at Mr. Bradley's house was a .45 caliber gun used in the shooting. N.T., 9/14/10 at 31–32, 36. Therefore, Appellant's argument is far from compelling, and we find the evidence is more than sufficient to sustain Appellant's conviction for third degree murder. Specifically, viewing the evidence in the light most favorable to the Commonwealth, as we must under our standard of review, *see O'Brien, supra,* we conclude Appellant acted with malicious intent by shooting at Mr. Ransom and anyone else who was in the area, including the deceased. Even if he did not intend to kill anyone, Appellant's actions showed recklessness for society and human life. *Truong, supra.*

For all the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

GANTMAN, J., Concurs in the Result.