J-S48014-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee, | : | |
| | : | |
| v. | : | |
| | : | |
| DARRELL DUPREE DIXON, | : | |
| | : | |
| Appellant | : | No. 1093 MDA 2013 |

Appeal from the Judgment of Sentence May 23, 2013,
Court of Common Pleas, Schuylkill County,
Criminal Division at No. CP-54-CR-0001358-2012

BEFORE:  DONOHUE, JENKINS and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED AUGUST 01, 2014**

Darrell Dupree Dixon ("Dixon") appeals from the May 23, 2013 judgment of sentence entered by the Schuylkill County Court of Common Pleas.  Upon finding the sole issue he raises for our review to be waived, we dismiss the appeal.

The trial court provided the following summary of the facts of the case:

> Testimony at trial established that on August 23, 2012, the Tremont branch of the Miner's Bank was robbed by Juan Cooke.  After threatening to shoot the bank personnel, (Cooke does not appear to have actually had a gun) he required them to fill two bags with cash and ran out the front door.  Cooke ran across the street and through a passageway between two houses immediately across the street from the bank.  That passageway led to an alley where [Dixon] was waiting in a van.  [Dixon] then drove Cooke out of town and onto I-81 heading south.

*Retired Senior Judge assigned to the Superior Court.

Russell Maurer, who lives across the street from the bank, was returning home and on the deck at the back of his house when he saw a silver-blue van coming fast down the alley behind his house. It stopped behind his neighbor's garage and then quickly backed up and pulled alongside the garage. He then heard a noise between his and his neighbor's property, and a man ran past his deck wearing a big heavy jacket and carrying a sack. Because of the sack, Mr. Maurer assumed there had been a bank robbery, and he immediately went to the bank and reported what he had seen.

Mr. Mauer's information allowed the state police to put out an alert for the van on I-81, and it was quickly spotted heading south. Trooper Kyle Kutz was the first to spot the vehicle. He pulled alongside the driver's side of the van and could see two men inside. He identified [Dixon] as the one driving the van and observed that the passenger seat was reclined and the passenger was attempting to hide his face. Trooper Kutz dropped back behind the van, which was traveling 60-65 mph, and called for assistance.

They passed another trooper at the Dauphin County/Lebanon County line, and Trooper Kutz then activated his lights and siren at Exit 80. The van slowed like it was going to stop on the off-ramp where there were two or three cars ahead of it waiting for a red light. Suddenly, the van went around the stopped vehicles, across the road and back onto I-81 south, accelerating quickly to over 110 mph.

With other state police cars now behind him, Trooper Kutz chased the van for 5.5 miles through heavy traffic, cutting in and out of lanes until the van crashed while attempting to make a pass on the grass median. [Dixon] was still in the driver's seat when apprehended. More than $17,000 was recovered from the van, including marked bait

- 2 -

money which the tellers had placed in the bags that Cooke gave them.

After Dixon was medically cleared at the hospital where he had been taken for treatment of some injuries, Trooper Robin drove him to the Reedsville barracks where he was given his **_Miranda_** rights and interviewed by Troopers Robin and Walasavage.

They testified that Dixon gave them an oral statement first and then was asked to put it in writing, which he did. In his oral statement, Dixon told them that Cooke had called him that morning and offered to pay him $1,000 for a ride to Tremont but did not say why. Dixon borrowed a van and drove Cooke to Tremont. They passed the bank, went around the block and back down the main street where Dixon dropped off Cooke. Dixon drove around to a back, dirt alley. Shortly thereafter, Cooke came running across a lot and got into the van. They left Tremont and went south on I-81 toward Harrisburg.

Dixon described an officer pulling alongside and asking him to roll down the window. He complied. He said he thought about stopping but did not, nor did he stop when another police car got behind him and their lights and sirens were activated.

Instead, he said he used his cell phone to call his mother to let her know what was going on. He said that he was trying to stop on the grass median when he crashed.

His written statement, which was read in court by one of the officers, was basically the same but with less detail.

[Dixon] testified that Cooke called him around 8 a.m. and asked for a ride and offered money for gas. Cooke had a jacket over his arm when they met that morning. He told Dixon to drive north on I-81 to the Tremont exit.

> According to Dixon, Cooke never told him why he was going to Tremont. Once they got there, Cooke told him to drive around the block and then drop him off. He said that he could not find a place to park, so he went behind the houses. Cooke then came through an alleyway between two houses and got in the van. He said that Cooke was not running and was not carrying anything. Cooke directed how to get back on I-81, and they headed south.
>
> Dixon acknowledged that the police wanted him to pull over, but he said that he had been stopped four times in the last month due to profiling. He acknowledged weaving in and out of traffic but denied traveling at 110 mph. He claimed to have been trying to pull over in the median when the vehicle crashed. He further denied ever seeing any money.

Trial Court Opinion, 7/22/13, at 5-8.

Following trial, the jury convicted Dixon of criminal conspiracy, robbery threatening serious bodily injury, robbery of a financial institution, theft by unlawful taking, receiving stolen property, and fleeing or attempting to elude police.[1] The trial court found him guilty of careless driving and reckless driving.[2]

On May 23, 2013, the trial court sentenced Dixon to an aggregate term of five to ten years of imprisonment, plus costs and fees. Dixon did not file a post-sentence motion. He filed a timely notice of appeal on June 17, 2013, and thereafter complied with the trial court's order for a concise

---

[1] 18 Pa.C.S.A. §§ 903(c), 3701(a)(1)(iii), (vi), 3921(a), 3925(a); 75 Pa.C.S.A. § 3733(a).

[2] 75 Pa.C.S.A. §§ 3714(a), 3736(a).

statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) ("1925(b) statement"). Dixon raises one issue before this Court on appeal: "Whether the evidence presented against […] Dixon was legally insufficient as a matter of law in order to support his convictions?" Dixon's Brief at 4.

Dixon raises a challenge to the sufficiency of the evidence to convict him. In his 1925(b) statement, however, the only issue Dixon raised that comes reasonably close to raising a sufficiency claim states: "The verdict at trial was contrary to the preponderance of the evidence." 1925(b) Statement, 7/15/13, at ¶ 5. Assuming that we are correct that he intended for this issue to raise a challenge to the sufficiency of the evidence, it is insufficient to preserve it for appeal. As this Court has previously held:

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

*Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (internal citations omitted). Failure to properly preserve a sufficiency claim results in its waiver on appeal. *Id.*

Furthermore, our review of Dixon's argument in his appellate brief reveals that he does not include citations to any authority in support of his

- 5 -

sufficiency claim. Therefore, the issue is waived on that basis as well. ***See***

Pa.R.A.P. 2119(a), (b); ***see also Commonwealth v. Kearney***, 92 A.3d 51,

66 (Pa. Super. 2014) (an appellant's failure to develop an argument with

citation to pertinent authority results in waiver of the issue raised on

appeal).

Finding no reviewable issues before this Court, we dismiss Dixon's

appeal.

Appeal dismissed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/1/2014</u>