J-A11003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERICK ROBERT TROMETTER, | |
| Appellant | No. 695 MDA 2016 |

Appeal from the Judgment of Sentence December 21, 2015
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s): CP-49-CR-0001348-2014

BEFORE: SHOGAN and MOULTON, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                              **FILED JULY 24, 2017**

Appellant, Erick Robert Trometter, appeals from his judgment of

sentence entered in the Court of Common Pleas of Northumberland County

on December 21, 2015. We affirm.

The trial court summarized the facts of this case based on testimony

provided at trial as follows:

> At trial, there was extensive testimony by Brad Hare,
> Acting Chief of the Sunbury Police Department at the time of the
> incident, as to his encounter with [Appellant]. Chief Hare
> testified he was responding to a report that Erick Trometter,
> [Appellant], was involved in an assault on his grandmother.
> Chief Hare was traveling on Shikellamy Avenue in Sunbury,
> when he observed [Appellant] walking down the road and pulled
> up alongside him. Chief Hare testified that [Appellant] initially

---

[*] Former Justice specially assigned to the Superior Court.

gave Chief Hare a false name. Hare explained to [Appellant] he was looking for a male individual who had just assaulted an elderly female and wanted to know [Appellant's] name. Hare stated [Appellant] appeared nervous and frustrated and was clenching his fists and shaking them.

Based on the lack of cooperation from [Appellant], Chief Hare pulled his patrol car to the side of the road and exited the vehicle. Again, Hare asked [Appellant] for his name and identification. [Appellant] indicated he did not have identification. Chief Hare testified that based on his experience as a law enforcement officer and [Appellant's] mannerisms, he knew something was not right. Chief Hare asked [Appellant], "You're Erick Trometter, aren't you?" [Appellant] still would not respond to Chief Hare's requests to identify himself. Due to the hot weather, Hare asked [Appellant] if he would come and sit in the patrol car while he tried to positively identify him. He asked [Appellant], "Erick, come over to the [car], and we'll deal with this." [Appellant] refused to move.

After warning [Appellant] of the possibility of being "tased", [Appellant] reluctantly put his hands on the hood of the police cruiser in order for Chief Hare to pat him down for weapons. Chief Hare noticed a wooden handle sticking out of [Appellant's] pockets and inquired "What's in your pocket here?" Chief Hare described how [Appellant] turned around and shoved him. At this point [Appellant] pulled out the wooden object which was a large knife, so the Chief backed away. [Appellant], in an agitated state, said, "I'm not going back to jail. You're not taking me back to jail". Chief Hare issued verbal commands to [Appellant] to drop the knife, but [Appellant] moved forward, he would not comply. [Appellant] continued to advance towards Chief Hare at which point Chief Hare deployed his taser weapon and pulled the trigger. [Appellant] dropped to one knee but still refused to drop the knife. [Appellant] was growling and got off the ground at which time Chief Hare deployed the taser again. [Appellant] ripped the wires off the probe and advanced again towards Chief Hare with the knife. Chief Hare deployed another set of probes and again [Appellant] ripped them off. Chief Hare pulled his service weapon out of his holster and pointed [it] towards [Appellant]. [Appellant] continued to say he was not going back to jail. After numerous warnings, the encounter ended with Chief Hare shooting one round into [Appellant's] abdomen. After radioing EMS, the Chief approached [Appellant]

- 2 -

and kicked the knife out of his hand. Other officers then arrived, and [Appellant] received medical attention.

This encounter was also observed by a third party, Barbara Diehl, who saw [Appellant] "with a knife in a raised position coming at the police officer." She related to the jury that she saw the police officer taser him, but [Appellant] did not go down. The next thing she remembers is the police officer shooting [Appellant], after repeatedly telling him to drop the knife. These events were also corroborated by two city employees who were in the vicinity at the time.

Finally, there was testimony by a state trooper in the role of a criminal investigator who interviewed [Appellant] on July 14, 2014. [Appellant] was described as awake and coherent at the hospital that day. There was an admission by [Appellant] to him that he had the knife in his left hand and he was not following Chief Hare's commands because he wasn't going back to jail. He told the trooper that on that occasion he would rather die than go back to jail. [Appellant's] recollection was that he was ten feet from Chief Hare when he was shot. The trooper testified that there is a "rule of thumb" used in officer training that someone within twenty-one feet with a knife is a deadly force situation based upon normal reaction time.

[Appellant] in his own defense at trial testified he did not act in an aggressive manner towards Chief Hare.

Statement in Lieu of Formal Opinion, 9/9/16, at unnumbered 2-4.

Following a jury trial, Appellant was convicted on August 28, 2015, of two counts of aggravated assault, and one count each of possession of a weapon, simple assault, and recklessly endangering another person.[1] On December 21, 2015, Appellant was sentenced to an aggregate term of four to eight years in a state correctional institution. Appellant filed a *pro se*

_____

[1] 18 Pa.C.S. § 2702(a)(2), 18 Pa.C.S. § 2702(a)(6), 18 Pa.C.S. § 907(b), 18 Pa.C.S. § 2701(a)(3), and 18 Pa.C.S. § 2705, respectively.

notice of appeal on January 4, 2016.[2]  Appellant filed a motion for appointment of counsel on May 9, 2016.  This Court issued an order on June 6, 2016, remanding the matter to the trial court for a hearing to determine whether Appellant required new counsel or would proceed *pro se*.  Following a hearing, Appellant was appointed counsel on June 29, 2016.  The trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

I.  Whether the evidence was sufficient to sustain the conviction for aggravated assault attempt to cause serious bodily injury to an enumerated person.

Appellant's Brief at 7 (full capitalization omitted).

We first note that while Appellant filed a Pa.R.A.P. 1925(b) statement as directed, the statement lists the following single claim:  "The Trial Court erred in its verdict against the Appellant as the Commonwealth's evidence was insufficient to support his conviction."  Concise Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b), 8/23/16, at 1.

We have explained that

In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient.  Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which

_____

[2] The record reflects that counsel was permitted to withdraw on March 2, 2016.  It is not apparent from the record why Appellant filed a *pro se* notice of appeal.

- 4 -

contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013) (internal citations and quotation marks omitted).

Here, Appellant not only failed to specify which elements he was challenging in his Rule 1925(b) statement, he also failed to specify which conviction he was challenging. Thus, we could find Appellant's sufficiency claim waived on this basis. ***Garland***, 63 A.3d at 344. We decline to find waiver on this basis, however, and proceed to address the merits of Appellant's claim.

Appellant argues that the evidence is insufficient to establish that he had the requisite intent or took a "substantial step" necessary for a conviction of aggravated assault.[3] Appellant's Brief at 13-14. Specifically, Appellant asserts that he did not lunge at or strike Chief Hare, or make any threats directed at the chief. ***Id.*** at 14-15. Appellant further maintains that he and Chief Hare were consistently separated by a distance of approximately ten feet during the "'slow motion police chase' around Chief Hare's vehicle," at which time Appellant did not increase his speed in

---

[3] As noted, Appellant was convicted of two counts of aggravated assault, both related to an assault on a police officer. Although Appellant does not specify which aggravated assault conviction he is challenging, based on the wording of his issue presented and his argument, we conclude that he is challenging his aggravated assault conviction under 18 Pa.C.S. § 2702(a)(2).

pursuing the chief. *Id.* at 14-15. Appellant relies on ***Commonwealth v. Savage***, 418 A.2d 629 (Pa. Super. 1980), and ***Commonwealth v. Matthews***, 870 A.2d 924, 929 (Pa. Super. 2005), in support of his argument that brandishing a knife is equivalent to the act of pointing a firearm at an individual, which this Court has held to constitute only a simple assault. *Id.* at 15-16.

Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Lopez***, 57 A.3d 74, 79 (Pa. Super. 2012).

Aggravated assault is defined, in relevant part, as follows:

**(a) Offense defined.**--A person is guilty of aggravated assault if he:

* * *

- 6 -

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;

\* \* \*

**(c) Officers, employees, etc., enumerated.--**The officers, agents, employees and other persons referred to in subsection (a) shall be as follows:

(1) Police officer.

18 Pa.C.S. § 2702(a)(2), (c)(1).

"Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. The Commonwealth, in sustaining an aggravated assault conviction, "need only show the defendant attempted to cause serious bodily injury to another, not that serious bodily injury actually occurred." *Commonwealth v. Galindes*, 786 A.2d 1004, 1012 (Pa. Super. 2001). An "attempt" exists when "the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetuating serious bodily injury upon another." *Id.* "The Commonwealth can establish specific intent from the circumstances surrounding the incident." *Id.*

Here, the evidence is sufficient to establish Appellant's continued movement with the raised knife toward Chief Hare, despite Chief Hare's verbal commands to Appellant to drop the knife. N.T., 8/28/15, at 34-36. While advancing toward Chief Hare, Appellant continued to state in an agitated manner that he was not going back to jail and that Chief Hare was not taking him back to jail. *Id.* at 35-39. When Appellant continued to move toward Chief Hare with the knife, Chief Hare deployed his taser. *Id.* at 37. After Appellant was tased multiple times and removed two sets of probes, Appellant continued to advance with the knife towards Chief Hare. *Id.* at 37-38. Despite continued warnings to drop the knife, Appellant refused and Chief Hare fired his service weapon. *Id.* at 35-39. Accordingly, the evidence is sufficient to establish that Appellant acted in a manner that constituted a significant step toward perpetuating serious bodily injury upon Chief Hare. *Galindes*, 786 A.2d at 1012. Thus, there was sufficient evidence of record establishing that Appellant committed aggravated assault.

Moreover, we are unpersuaded by Appellant's argument that his actions constituted merely simple assault as his actions were akin to pointing a weapon at someone. While it is well-settled that pointing a gun at another person in a threat to cause serious bodily injury, without more, does not constitute an aggravated assault as this Court held in *Savage*, 418 A.2d at 632, we cannot agree that Appellant's actions were equivalent to simply

pointing a firearm at another person. As outlined above, Appellant brandished a large knife which he had pointed at Chief Hare, a law enforcement officer; he continued to advance toward Chief Hare despite verbal commands to drop the knife and despite being tased multiple times; and he consistently muttered in an agitated state that he would not go back to jail and that Chief Hare would not take him there. In fact, Appellant's progression toward Chief Hare was halted only by Chief Hare's discharge of his service weapon into Appellant's abdomen. Thus, Appellant's actions constituted a substantial step toward perpetrating a serious bodily injury upon another. Accordingly, we agree with the trial court's conclusion that there was sufficient evidence to establish that Appellant was guilty of aggravated assault.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2017