J-S36042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES HACKLEY | : | |
| | : | |
| Appellant | : | No. 1769 MDA 2018 |

Appeal from the Judgment of Sentence Entered September 20, 2018
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0003536-2017,
CP-40-CR-0003539-2017

BEFORE:  PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                **FILED SEPTEMBER 23, 2019**

Charles Hackley (Hackley) appeals from the judgment of sentence entered in the Court of Common Pleas of Luzerne County (trial court) following his non-jury trial convictions for several offenses related to a drug sale. Hackley's appellate counsel seeks to withdraw under ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We grant the application to withdraw and affirm the judgment of sentence.

**I.**

The trial court set forth the pertinent facts in its opinion, which we now adopt:

> On July 5, 2017, Kingston Borough Police Detective Richard Kotchik (Kotchik) and Patrol Officer Robert Miller (Miller) were working as members of the Luzerne County Drug Task Force (Task

_____

* Retired Senior Judge assigned to the Superior Court.

Force) investigating a controlled drug buy. Detective Edward Palka (Palka), a detective assigned to the Kingston Police Department Narcotics Unit, was also working on the investigation that day. The Task Force intended to use Joel Curry (Curry), a confidential informant, to purchase either heroin or crack cocaine from Gabriell Laimo (Laimo) with whom [Hackley] had an intimate relationship. Curry had made arrangements with Laimo by phone to meet her at Heffron's gas station in the borough of Luzerne in order to purchase ten bags of heroin (also known as a "bundle" of heroin) from her. Officer Miller conducted a search of Curry both before and after the transaction and nothing illegal was found on his person. A series of phone calls was placed to [Hackley] or to Laimo, and an agreement was made to have Curry meet Laimo in the area of Heffron's. Detective Kotchik drove Officer Miller and Curry to the area and parked where they would have a good vantage point of the parking lot. Curry was under police surveillance the entire time.

While Curry waited outside the car, Laimo arrived driving a silver PT Cruiser. The front windows of Laimo's car were down. Officer Miller had a clear view of [Hackley] in the front passenger seat. Officer Miller took a video of what he was observing. While conducting surveillance of the transaction, Detective Palka also had a clear view of the PT Cruiser and was able to get a good look at [Hackley] and take digital photographs of him. Detective Palka saw [Hackley] lean towards Laimo as Curry was getting in the car. Curry testified that he saw [Hackley] hand heroin to Laimo. Laimo exited the driver's seat and switched places with a white female who was in the back seat of the car. Curry stated that after pulling out of the gas station, he gave Laimo $80.00 in prerecorded bills and she gave him nine of the packets of heroin that she got from [Hackley]. Curry said Laimo kept one of the ten packets of heroin. The car drove for a few blocks and pulled over at the corner of Schuyler Avenue where Curry got out of the car.

While they were driving, [Hackley] asked Curry if he knew anybody that was renting their cars. Curry testified that it is common for addicts to rent their cars out for drugs, and that he had done it in the past while he was an addict. Curry returned to Detective Kotchik's vehicle and got inside. Curry turned over nine packets of heroin. The heroin was packaged in double sealed bags which were white with the black stamp of "Gold Rush" and black rubber bands around the outside. The packaging was consistent with heroin packaging. Lauren Force, a forensic scientist II with

the Pennsylvania State Police, Bureau of Forensic Services, Wyoming Regional Laboratory, testified that her tests confirmed that the substance in the bag she tested was in fact heroin and other controlled substances, including fentanyl.

Officer Miller was present and involved in [Hackley]'s arrest a week after the controlled buy involving Curry. On July 12, 2017, a large contingent of officers, including some officers in uniform, met to execute a search warrant at . . . the residence from which Laimo was selling heroin. Neither [Hackley] nor Laimo was at the residence at the time the search was conducted. Detective Kotchik and Officer Miller moved Kotchik's vehicle down the block in order to see if either [Hackley] or Laimo had come back to the residence while the warrant was being served.

Half a block away from the residence, Officer Miller and Detective Kotchik saw Laimo pull up in a silver Honda with [Hackley] in the passenger seat. The officers contacted Detective Palka inside the residence to advise him that the two targets of the investigation were outside.

. . . .

Detective Palka was the first to approach [Hackley]. Detective Palka identified himself as police and gave numerous commands to [Hackley], including telling him several times that he was under arrest and telling [Hackley] to get down on the ground. Officer Miller and Detective Kotchik were still approaching the car when [Hackley] ran away between two houses. Officer Miller was also yelling, "Police, you're under arrest" at [Hackley]. Detective Palka continued to yell "stop, police, stop" as he chased [Hackley].

Ultimately, over twenty police officers from several different departments and agencies engaged in an extensive foot chase through a busy area of town, searching for [Hackley] for at least an hour before he was eventually apprehended. Even after he was found hiding in tall grass, [Hackley] ignored the commands of Officer Ryan Mahovick, who was holding him at gun point.

Trial Court Opinion, 1/18/19, at 3-7.

Hackley was charged at docket number 2017-3536 as follows: three

counts of Conspiracy; two counts of Possession with Intent to Deliver Heroin;

and one count of Possession of Heroin. At docket number 2017-3539, Hackley was charged with one count each of Escape, Flight to Avoid Apprehension, and Resisting Arrest. Following a non-jury trial, he was convicted as charged at 2017-3536, and of Escape at 2017-3539.

Hackley was sentenced at docket number 2017-3536 to a term of 24 to 48 months as to the Delivery count, and 24 to 48 months as to the Conspiracy to Deliver count. As agreed by the parties, the remaining counts merged for sentencing purposes. He was also sentenced at docket number 2017-3539 to consecutive term of 24 months to 48 months. Hackley appealed following the denial of timely post-sentence motions, and appellate counsel has petitioned to withdraw.[1]

---

[1] In **Commonwealth v. Walker**, 185 A. 3d 969 (Pa. 2018), our Supreme Court held that under Pa.R.A.P. 341, an appeal must be quashed if a defendant files only a single notice of appeal as to multiple docket numbers. Although Hackley filed one notice of appeal for two docket numbers, **Walker** is inapplicable here because the trial court and the Prothonotary treated the proceedings in a way that is tantamount to complete consolidation under one docket number.

Here, certified records on appeal were prepared for docket numbers 2017-3539 and 2017-3536, but only the latter includes an order of judgment of sentence. The order bears both docket numbers, but advises Hackley of having 30 days "from this order" (in the singular), to appeal to the Superior Court. In so writing, the trial court essentially told Hackley that there was one order, and that he was entitled to only one appeal. This Court held recently in **Commonwealth v. Stansbury,** 303 EDA 2019 *3 (Pa. Super. September 5, 2019), that a party may file a single notice of appeal in these circumstances because it results from a breakdown of court operations.

- 4 -

**II.**

We must first address appellate counsel's application to withdraw. **See Commonwealth v. Martuscelli**, 54 A.3d 940, 947 (Pa. Super. 2013) ("When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw."). Both procedural and substantive requirements must be satisfied. Procedurally, counsel must: (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the brief to the defendant; and (3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems

---

The case docket for 2017-3539 further confirms the existence of at most a single order because it does not contain a judgment of sentence or any other document relating to the present appellate proceedings. Instead, the Prothonotary's handwritten notes next to several entries on the case docket sheet direct the reader to "See 3536-17." Pa.R.A.P. 301(b) provides that "Every order shall be set forth on a separate document," but the trial court only set forth one document – the order entered at 2017-3536, which bore the two docket numbers. This means there was no separate order entered at 2017-3539 for Hackley to appeal. **See** Pa.R.A.P. 301(a) ("no order of a court shall be appealable until it has been entered upon the *appropriate* docket in the lower court.") (Emphasis added). Indeed, the inclusion of two docket numbers in the one order raises the question of whether any appealable order was entered at all. **See** Pa.R.A.P. 301(b) (making entry of a separate document for each order a "requisite" for appealability). Thus, it is clear that Hackley's notice of appeal comports with **Walker** because the trial court was responsible for any of its potential defects.

worthy of the court's attention. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013).

Counsel has complied with these procedural mandates. The application indicates that counsel reviewed the entire record and concluded that the instant appeal is wholly frivolous. The application states that a copy of the *Anders* brief was attached to a letter, which informed Hackley that he has the right to hire private counsel or file a *pro se* brief.[2] *See Commonwealth v. Woods*, 939 A.2d 896, 900 (Pa. Super. 2007) (noting this Court's precedents requiring that counsel attach to their withdrawal petition a copy of the letter sent to the client).

We now examine the substantive elements. The brief accompanying the petition to withdraw must: (1) provide a summary of the procedural history and facts with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal isf frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. *See Santiago*, 978 A.2d at 361. Counsel's *Anders* brief summarizes the factual and procedural history and identifies two potential issues. It cites to parts of the record that tend to

_____

[2] Hackley sought and received two extensions of time to file a *pro se* response. On June 27, 2019, we extended the deadline to July 15, 2019, and noted that no further extensions would be granted. Hackley filed a response on July 17, 2019, and he included an exhibit showing that he placed the brief in the prison mail system on July 12, 2019. We consider the brief timely filed.

support the claim and outlines the legal analysis that led counsel to conclude that any appeal would be frivolous.

## III.

Because counsel has complied with the aforementioned requirements, we now "make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5. We will consider "not only the brief filed by counsel but also any *pro se* appellate brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007). The *Anders* brief identifies two issues arguably supporting an appeal: (1) a sufficiency challenge to all convictions and (2) whether the sentence was an abuse of discretion. The *pro se* brief addresses several other issues.[3]

_____

[3] The *pro se* brief is 185 pages and its list of questions presented simply declares that Hackley was wrongfully convicted in violation of the 4th, 5th, 6th, and 14th Amendments to the United States Constitution, and that all of his attorneys were ineffective. While Hackley obviously expended considerable effort in preparing the brief, the failure to raise and argue discrete issues precludes meaningful discussion.

In any event, the vast majority of his issues appear to be ineffectiveness claims. By way of example, Hackley avers that trial counsel failed to impeach one of the testifying officers: "[Counsel] failed to impeach Officer Miller for falsely testifying (as indicated under Section (B)(1), (IV), (a), (b), and (c), and (d)) , when there [was] no person identified and no person accused by Officer Miller . . . "). *Pro se* Brief at 37. Other claims not challenging trial counsel's stewardship fail to identify or discuss any applicable case law. An example is Hackley's allegation that the search warrant for Laimo's residence was defective. Hackley fails to explain why he would be entitled to relief even if that were true. In short, nothing in Hackley's *pro se* brief persuades this Court that there is a non-frivolous issue.

The ***Anders*** brief addresses the merits of some of the sufficiency claims and opines that the verdict cannot be attacked because the trial judge rejected Hackley's testimony at trial, where he stated that the object he handed to Laimo was not drugs but a cigarette. Hackley further stated that he was simply with Laimo in the car because of their relationship and had no knowledge of the sale. Counsel correctly observes that this is a credibility determination properly left to the fact-finder.

However, this merits analysis presumes that the issues are preserved for review. In his 1925(b) Statement, Hackley framed his challenge to the verdicts as follows:

> Whether the Commonwealth proved beyond a reasonable doubt and the evidence was sufficient to convict the Defendant of the following charges: No. 3536 of 2017, Count I, Delivery of Heroin; Count II, Criminal Conspiracy to Deliver Heroin; Count III, Possession with Intent to Deliver Heroin; Count IV, Criminal Conspiracy to Possess with Intent to Deliver Heroin; Count V, Possession of a Controlled Substance; Count VI, Criminal Conspiracy to Possess Heroin; No. 3539, Count I, Escape.

Concise Statement, 11/9/18, at 1.

We agree with the trial court that the Rule 1925(b) statement waived all issues respecting the sufficiency of the evidence. ***See Commonwealth v. Reeves,*** 907 A.2d 1, 2 (Pa. Super. 2006) ("If a Rule 1925(b) statement is too vague, the trial judge may find waiver and disregard any argument."). This generic boilerplate challenge to all elements of every single conviction is too vague. ***See Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013) (sufficiency claims waived where statement alleged that "the evidence

- 8 -

was legally insufficient to support the convictions"). Furthermore, the fact that **Anders** counsel's defective Statement caused these issues to be waived does not alter that analysis. **See Commonwealth v. Garang**, 9 A.3d 237, 244 (Pa. Super. 2010) (examining merits of issue discussed in **Anders** brief and concluding issue was waived for failing to include it in the Pa.R.A.P. 1925 statement).

Moving on to the other identified issue – a challenge to the trial court's discretion in imposing sentence – we find the claim to be frivolous. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." **Commonwealth v. Conte**, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). An appellant must satisfy a four-part test to invoke our jurisdiction. Among these requirements is establishing a "substantial question" that the sentence is not appropriate under the Sentencing Code. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Clarke**, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted).

Hackley cannot present a substantial question. The post-sentence motion simply stated: "Defendant is requesting This Honorable Court

reconsider the sentence imposed because the sentence . . . is running consecutively[.]" He then asked the judge to impose a concurrent sentence.

In general, the decision to impose consecutive sentences instead of concurrent does not present a substantial question. *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995). Something more, such as an allegation that the sentence is excessive in relation to the nature of the crimes or that the judge ignored mitigating circumstances, is needed. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015). Hackley simply requested that the judge reconsider his sentence. Since he did not allege that his sentence is excessive or violates the Sentencing Code in any way, the claim is frivolous.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/23/2019