J-S04033-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYMOND BRYAN GOURGUE | : | |
| | : | |
| Appellant | : | No. 813 EDA 2025 |

Appeal from the Judgment of Sentence Entered February 25, 2025
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0004000-2022

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:         **FILED FEBRUARY 23, 2026**

Appellant, Raymond Bryan Gourgue, appeals from the aggregate judgment of sentence of 25 to 50 years' incarceration, imposed after a jury convicted him of Murder in the Third Degree, 18 Pa.C.S. § 2502(c), and he then entered a negotiated guilty plea to Possession of a Firearm by a Person Prohibited, 18 Pa.C.S. § 6105(a)(1). We affirm.

The trial court summarized the facts and pertinent procedural history of this case, as follows:

> On May 14, 2021, at approximately 10:15 p.m., members of the Allentown Police Department responded to the 100 block of North Hall Street in the City of Allentown for the report of a "male victim down." Jose Bermudez, the victim, was found in front of 132 North Hall Street. He was unconscious when the officers arrived, and they immediately applied "life-saving measures" to him. While doing so, the officers observed multiple gunshot wounds to Mr. Bermudez's "upper torso/chest area."
>
> Mr. Bermudez died of a gunshot wound. An autopsy, as previously referenced, revealed that Mr. Bermudez sustained a gunshot wound to the torso that entered the back, went through the

abdomen, and came out his right side. The exit wound was located on his right side beneath the rib cage. No bullet was recovered. The gunshot wound "would have caused massive blood loss very quickly, leading to unconsciousness and death within minutes." The police commenced their investigation, but found the citizenry uncooperative. Every individual present denied knowledge about the shooting. The only information the police learned was that the dog they observed upon their arrival to the crime scene belonged to the Bermudez family. The dog was described as "very calm and friendly. The tail was wagging." The dog was returned to the Bermudez family.

Officers on scene observed and secured physical evidence relevant to the shooting. "Four shell casings" were located between 134 and 136 North Hall Street. Projectiles were also discovered at the scene. Detective Samson Wega, the lead investigator, was able to explain the location and significance of the casings and bullet fragments. It was his opinion that "the shooter was where the shell casings were and obviously the victim was where the fragments were…." No other casings were located, and no projectiles were discovered where the shooter would have been standing. The firearm used to kill Mr. Bermudez was not recovered. Even so, Detective Mark Garrett, a firearm and tool mark expert, was able to offer the opinion that the four (4) discharged cartridge casings were discharged from the same unknown firearm.

Faced with the lack of witness cooperation, Detective Wega turned his attention to security cameras in the area. He located security camera footage from the rear of 142 North 7th Street which captured the shooting. The security video was introduced into evidence, and shows the person who shot Mr. Bermudez walk up to him and fire multiple shots at him. A close examination of the video reveals two or three muzzle flashes from the firearm. At the time of the first muzzle flash, according to Detective Wega, the firearm was approximately 15 to 20 feet away from Mr. Bermudez. The person holding the firearm continues to advance and discharged the firearm again as Mr. Bermudez is falling. The shooter then fled the scene.

Piecing together security camera footage, Detective Wega was able to develop a description of the shooter, and ultimately identified … [A]ppellant, whom he did not meet until May 18, 2021. The surveillance footage also helped Detective Wega

identify various other individuals who were previously unknown to him, from whom he would attempt to elicit information to further the investigation. One of those individuals was Jasmine Suarez, who appeared to be present at the time of the shooting and familiar with the shooter and the victim. An interview was arranged with her, and later the same day, Detective Wega returned to the 500 block of Chew Street, the neighborhood of Ms. Suarez. He got out of his vehicle and observed the daughter of Ms. Suarez, Atiah Rivera, walking with a male, who turned out to be … [A]ppellant, near Ms. Suarez's front porch at 519 Chew Street. … [A]ppellant matched the physical description of the person Detective Wega saw on the video firing the firearm.

… [A]ppellant and Ms. Rivera looked in Detective Wega's direction, and before he could tell them he wanted to speak with them, they both ran to a nearby vehicle. Detective Wega called out to them as … [A]ppellant entered the driver's side of the vehicle. … [A]ppellant then drove in Detective Wega's direction, necessitating Detective Wega to draw his firearm. … [A]ppellant then put the vehicle in reverse and drove off with Detective Wega running after it. Officer Ariel Vidal was working patrol that day when he heard a call from Detective Wega that he was "chasing possibly a homicide suspect." He proceeded to the area of Detective Wega's call, and observed the described vehicle run a steady red light. He then began to pursue it. The vehicle "parked up" shortly afterward, and … [A]ppellant got out of the vehicle. Officer Vidal gave … [A]ppellant commands, *i.e.*, show his hands. … [A]ppellant, instead, began backing up and then started to run away. Officer Vidal chased him, and with the assistance of other responding officers, … [A]ppellant was taken into custody, but not without difficulty.

… [A]ppellant was transported to the Allentown Police Department where an interview was conducted with him. He was advised of his **Miranda**[1] rights, but never admitted that he shot Jose Bermudez. In a subsequent interview, conducted on October 22, 2022, he told Detective [Kevin] Mriss that he wanted the

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Bermudez family to know that he was "sorry" and that he "wasn't a bad guy."

… [A]ppellant testified at trial and admitted to shooting Jose Bermudez. He initially fired two shots, and then two more. "Once I fired two more and I seen [*sic*] him drop, I stopped. If -- I'm sorry to say this…but if he didn't drop, I would have continued firing at him." … [A]ppellant testified that he was threatened by Mr. Bermudez and believed he had a gun. He contended that Mr. Bermudez started reaching for a firearm before he pulled his own .45 caliber firearm and shot Mr. Bermudez.

… [A]ppellant, in his taped interview with the police, never told the detectives that Mr. Bermudez had a firearm, or that he was fearful of him. He did talk about the Bermudez's dog, but the dog, by all accounts, was on a leash, and aside from barking, posed no discernable threat. He also, at his request, spoke with Detective Mriss off camera and expressed his remorse to the Bermudez family. … [A]ppellant, during his testimony, claimed that in his off-camera statement to Detective Mriss, he suggested that Mr. Bermudez had a gun, but never raised it. He vacillated in what he told Detective Mriss.

On rebuttal, Detective Mriss testified that … [A]ppellant never said Mr. Bermudez had a firearm. No firearm was ever recovered from the crime scene, and the firearm … [A]ppellant used was never located.

Trial Court Opinion ("TCO"), 6/17/25, at 3-7 (footnoted citations to the record omitted).

Appellant was charged with Criminal Homicide, 18 Pa.C.S. § 2501, and Possession of a Firearm by a Person Prohibited, 18 Pa.C.S. § 6105(a)(1), and the charges were severed prior to his jury trial. Appellant proceeded to a jury trial in July of 2023 on the homicide charge, at the close of which the jury convicted him of third-degree murder. On September 27, 2023, the court sentenced Appellant to a term of 20 to 40 years' incarceration for that offense. A motion for reconsideration of sentence was filed on October 6, 2023, and

denied by the trial court on December 4, 2023. Appellant timely appealed, but on June 28, 2024, we quashed his appeal as interlocutory based on Appellant's pending firearm charge.

On February 25, 2025, Appellant pled guilty and was sentenced on the Possession of a Firearm by a Person Prohibited charge to a consecutive term of 5 to 10 years' incarceration. No post-sentence motions were filed. He then filed a timely notice of appeal. Appellant complied with the trial court's subsequent order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court filed its Rule 1925(a) opinion on June 17, 2025.

On appeal, Appellant states one issue for our review:

> Whether the weight of the evidence supported a conviction under 18 Pa.C.S. § 2501 when []Appellant raised an affirmative defense of self-defense for which the Commonwealth has the burden to overcome beyond a reasonable doubt but failed to do so at trial.

Appellant's Brief at 2.

We are compelled to conclude that Appellant's claim is waived, as Appellant failed to specify this claim in his Rule 1925(b) statement. Therein, he stated:

> Whether the Commonwealth established, beyond a reasonable doubt, **_sufficient evidence_** to refute defendant's claim of self-defense at trial.

Rule 1925(b) Statement, 5/24/25, at unnumbered 1 ¶ 1 (emphasis added).

Clearly, Appellant raised a sufficiency-of-the-evidence claim, not a weight-of-the-evidence claim. Therefore, the trial court did not address his weight-of-the-evidence argument in its Rule 1925(a) opinion. Instead, the court only addressed Appellant's sufficiency issue, first concluding he waived it by failing to specify, in his Rule 1925(b) statement, in what way the Commonwealth's evidence was insufficient to disprove his claim of self-defense. *See* TCO at 8 (citing, *inter alia*, ***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013) (finding a "generic statement" the evidence was insufficient, without more, is insufficient to preserve the claim for appellate review)). However, the trial court alternatively found Appellant's sufficiency issue would lack merit, even if it had been preserved. ***See id.*** at 9-11.

Appellant does not develop any challenge to the sufficiency of the evidence on appeal, thus waiving that claim for our review. ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."). Moreover, Appellant did not include in his Rule 1925(b) statement the weight-of-the-evidence issue

- 6 -

he raises herein. Accordingly, that issue is also waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Pa.R.A.P 1925(b) Order, 4/1/25, at unnumbered 1 ("It is further ordered that any issue not properly included in the statement timely filed and served pursuant to Pa.R.A.P. 1925(b) shall be deemed waived[.]") (emphasis and unnecessary capitalization omitted); ***see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (citations omitted; some brackets added).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/23/2026