J-S72020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWIN GIANG | : | |
| | : | |
| Appellant | : | No. 830 MDA 2018 |

Appeal from the Judgment of Sentence April 20, 2018
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-SA-0000002-2018

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 21, 2019**

Appellant, Edwin Giang, appeals from the judgment of sentence entered

on April 20, 2018, following a bench trial.  We affirm.

The trial court summarized the procedural history of the case as follows:

> As a result of two traffic stops on September 24, 2017, [Appellant] was cited for driving a commercial vehicle without a commercial driver's license (four counts), unlawful activities (six counts), registration and certificate of title required, and identification markers and license or road tax registration card required.  Following a trial at which he did not appear, he was found guilty of all charges and fined by a magisterial district judge on December 5, 2017.  From the convictions, [Appellant] filed appeals to this court on January 4, 2018, and a de novo trial at which he appeared and was represented by counsel was held on April 20, 2018.

Trial Court Opinion, 8/1/18, at 1–2 (footnotes omitted). Following the *de novo* trial, the trial court found Appellant guilty of all charges.[1] N.T., 4/20/18, at 52. The trial court imposed sentence on each count of the costs of prosecution and an aggregate fine of $8,072. Appellant filed a timely notice of appeal to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following single issue on appeal, which is the same issue raised in his Pa.R.A.P. 1925(b) statement:

> 1. The verdict of guilt as to all summary traffic violations was based upon insufficient evidence and the verdict of the [c]ourt should be set aside as to each and every charge.

Appellant's Brief at 6.

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Sanchez***, 36 A.3d 24, 37 (Pa. 2011). In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Commonwealth v. Von Evans***, 163 A.3d 980, 983 (Pa. Super. 2017). "[T]he facts and

---

[1] Appellant was found guilty of four counts of Requirement for Commercial Driver's License, 75 Pa.C.S. § 1606, six counts of Unlawful Activities, 75 Pa.C.S. § 4107; one count of Registration and Certificate of Title Required, 75 Pa.C.S. § 1301(a); and one count of Identification Markers and License or Road Tax Registration Card Required, 75 Pa.C.S. § 2102.

circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525–526 (Pa. Super. 2016) (quoting ***Commonwealth v. Robertson-Dewar***, 829 A.2d 1207, 1211 (Pa. Super. 2003)). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–793 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Mucci***, 143 A.3d 399, 409 (Pa. Super. 2016). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

We have stated that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement **must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient**." ***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013) (emphasis added). Failure to identify what specific elements the Commonwealth failed to prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for appellate review. ***Id***.

Here, Appellant generically states that all findings of guilt in this case were based on insufficient evidence. Appellant's Brief at 14. Appellant does

not identify any element of any conviction that was not proven beyond a reasonable doubt. Appellant's Brief at 14–16. Consequently, Appellant's non-specific claim challenging the sufficiency of the evidence, which fails to state any elements of any crimes allegedly not proven by the Commonwealth, is waived. *Commonwealth v. Williams*, 959 A.2d 1252, 1257–1258 (Pa. Super. 2008).

Furthermore, we note that Appellant actually is challenging the eyewitness testimony of Pennsylvania State Trooper Michael Penrose, suggesting the identification was inconsistent because the trooper "could not remember whether Appellant was wearing glasses . . . ." Appellant's Brief at 14. Thus, he suggests the inconsistency "made the evidence insufficient to sustain the verdict beyond a reasonable doubt." *Id.* at 14.

Specifically, regarding the issue of identity, our Supreme Court has stated:

> Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction. The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight.[2] Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence.

*Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973) (internal citations and quotation marks omitted).

---

[2] Appellant did not challenge the weight of the evidence.

The trial court explained the testimony and evidence in this case as follows:

> The testimony of the affiant, Pennsylvania State Trooper Michael P[en]rose,[3] on behalf of the Commonwealth may be summarized as follows. On Sunday, September 24, 2017, Trooper Penrose was a member of the state police motor carrier inspection detail and at 5:35 a.m. clocked a 2016 Ford Truck, towing an open 2016 Kaufman car trailer with motor vehicles on it, traveling north near mile marker 52 on Interstate Route 81 in Cumberland County at a rate of 69 miles an hour in a 55-mile-per-hour zone. A traffic stop resulted in the identification of [Appellant] as the sole occupant and driver.
>
> The trooper detected numerous Vehicle Code violations associated with the driver and apparatus. [Appellant] had not been issued a commercial driver's license, as required for operation of vehicles of the combined weight (32,000 pounds) involved. He was driving a commercial vehicle unequipped with a valid operator's medical certificate, a current federal vehicle inspection certificate, a fire extinguisher, and an operable registration light, and he was in violation of out-of-service criteria due to the absence of a logbook. Finally, he was operating a vehicle subject to apportioned registration in Pennsylvania without such registration and without road/fuel tax registration and identification decals.[22]
>
> ---
>
> [22] The trooper also noted other violations in the form of the presence of a radar detector and a detachment of the emergency breakaway cable.
>
> In an exercise of leniency, Trooper P[en]rose issued only two citations to [Appellant], one for operating a commercial vehicle without a commercial driver's license and one for unlawful activity in the form of driving a commercial vehicle unequipped with a valid operator's medical certificate. He also issued eight warnings, declared [Appellant] out-of-service generally for not having a commercial driver's license and particularly for a 10-

---

[3] Throughout the trial court's Pa.R.A.P. 1925(a) opinion, Trooper Penrose's surname is misspelled.

hour-period for lack of a duty status record, and, at 6:15 a.m., left [Appellant] parked at a truck stop off Exit 52 of the highway.

At 7:18 a.m., at mile marker 53 on Route 81 Trooper P[en]rose observed [Appellant] driving the same truck and trailer, with the same license plate, northbound, and executed a traffic stop at the next exit ramp. In recounting the circumstances of his observation of [Appellant] as [Appellant] passed by him on the highway, the trooper described the weather as bright and sunny, the period of observation as five or six seconds, the sole occupant of the front seat as [Appellant], and the line-of-sight between them as at an even level. According to the trooper's testimony,

> A. . . . **He looked directly at me** and had the deer in the headlights look like he wasn't expecting me to be sitting there**. I can positively identify him as the same individual that I interacted with an hour previous**.
>
> * * * *
>
> A. He had the same clothes on as he had on that day. He hadn't changed clothing.
>
> * * * *
>
> A. It was the same truck, same lettering, same decals. On the stop the registration plate on the trailer was identical to the one that I previously had.
>
> * * * *
>
> A. I've been employed with the Pennsylvania State Police since January of 2007. If I have any inclination that what I'm doing is not correct, I don't follow through with it.... **[Appellant] was driving that truck when he proceeded past me.**

At this second stop, before making contact with the driver, Trooper P[en]rose found his attention diverted by a work truck with two men in it that pulled up behind his patrol car. He left his car to determine their purpose, with the following result:

There were two gentlemen in a work truck who advised that they were going to take [Appellant's] trailer for him, that they had met at the truck stop; however, they didn't really know each other.

During my brief interaction with them, again for officer safety issues, finding out who's parked behind me, as I turned to look forward again, [Appellant] had fled the scene and left in that truck and trailer.

I immediately broke contact with the two individuals that I was with and traveled attempting to find [Appellant], which I was unsuccessful.

A search by additional state police failed to locate driver, truck or trailer.

Trooper P[en]rose thereafter filed ten additional traffic citations against [Appellant]. Thus, in addition to the initial two charges arising out of his driving prior to the first stop, [Appellant] was cited for again driving without a commercial driver's license, for doing so in violation of an out-of-service declaration based upon the absence of a commercial driver's license, for doing so in violation of an out-of-service declaration based upon the absence of a record of duty hours, for unlawful activities related to the aforementioned absence of a medical certificate, federal vehicle inspection certificate, fire extinguisher, operable registration light, and logbook, for operating without a Pennsylvania apportioned registration, and for operating without a road/fuel tax registration and identification decals.

The testimony of [Appellant] on his own behalf may be summarized as follows. A Maine resident, [Appellant] obtained a temp[orary] job with a Massachusetts company to drive its truck and trailer to Greencastle, Pennsylvania, pick up some vehicles, and haul them to Massachusetts. A commercial driver's license was not a prerequisite for the employment, which was "kind of why he took the job," and he did not realize he needed one.

[Appellant] found himself grateful to the trooper for his initial leniency, including the issuance of warnings in lieu of citations. He understood that he had been declared out-of-service due to the lack of a commercial driver's license, and he

immediately called his employer from the truck stop to advise of the situation. The following transpired:

Q What did your employer say?

A They said they would try to call someone else locally in the area and get them over to me.

Q Did they do that?

A They did.

Q Who did they tell you was coming?

A A gentleman named Jose Montario.

Q And where was Jose coming from?

A I'm not too sure. He actually got Ubered or like a taxi and Uber. I think it was Uber.

Q So Jose came to the truck stop[?]

A Correct.

Mr. Montario arrived within about an hour of [Appellant's] call to his employer. This gentleman was light-skinned, with "dread hair, kind of braided back," had only a backpack, led [Appellant] to assume that he was probably from the Boston area, and said that he had a commercial driver's license. Within about five minutes of his arrival, Mr. Montario was driving them to Massachusetts; during the course of the journey, they made only two brief stops, one in Connecticut and one in Massachusetts, and were never pulled over. [Appellant] was paid by his employer for the job and then fired.

[Appellant] was unsuccessful in trying to arrange through the employer for Mr. Montario to be present at the trial. His assessment of the situation involving the "second stop" was that the trooper must have stopped another vehicle that resembled the one he had been operating, and that he was the victim of a misidentification.

Trial Court Opinion, 8/1/18, at 2–7 (footnote references to the notes of testimony omitted) (emphases added).

Appellant's sole basis for his claim of misidentification is that Trooper Penrose could not remember whether Appellant was wearing glasses.[4] Appellant's Brief at 14; N.T., 4/20/18, at 12. The trial court explained that at the *de novo* trial, Appellant conceded that he had been the driver during the first traffic stop but testified "neither he nor his vehicle had been present at the second stop." Trial Court Opinion, 8/1/18, at 2 (citing N.T., 4/20/18, at 36–38, 42–43). The trial court admitted that because of Appellant's claim, "a resolution of the balance of the case depended upon a credibility determination as between" Trooper Penrose and Appellant. Trial Court Opinion, 8/1/18, at 2. Acknowledging that the testimony was in conflict, the trial court underscored that a "mere conflict in the testimony of witnesses does not render the evidence insufficient because 'it is within the province of the factfinder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence.'" **Id.** at 8 (quoting **Commonwealth v. Rabold**, 920 A.2d 857, 859 (Pa. Super. 2007)). Upon cross-examination, when asked if he was "absolutely sure with the few seconds that you had that

_____

[4] Understandably, the trial court never commented on Appellant's assertion that Trooper Penrose could not remember whether Appellant wore glasses when the trooper stopped him the second time, as Appellant never specified an allegation of misidentification in his Pa.R.A.P. 1925(b) statement.

[Appellant] was actually the driver of this vehicle the second time," Trooper Penrose stated, "I would bet on my two sons' lives."  N.T., 4/20/18, at 21.

Therefore, even if Appellant's sufficiency challenges were not waived, we would find they lack merit based upon the trial court's credibility finding, as follows:  "In the present case, a resolution of the question of [Appellant's] guilt with respect to the charges he contested depended upon an assessment of the credibility of the two witnesses who testified at trial. The court in its capacity as trier-of-fact determined this credibility issue adversely to [Appellant]."  Trial Court Opinion, 8/1/18, at 8.  We may not re-weigh the evidence.  *Rogal*, 120 A.3d at 1001.

Judgment of sentence affirmed.

Judge Kunselman joins the Memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2019

- 10 -