J-A23037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CLOVIES O'NEIL BOYD :
:
Appellant : No. 64 WDA 2025

Appeal from the Judgment of Sentence Entered August 29, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0009336-2021

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: ` **FILED: NOVEMBER 6, 2025**

Appellant, Clovies O'Neil Boyd, appeals from the aggregate judgment of
sentence of 11 to 22 years' incarceration, followed by 3 years' probation,
imposed after he was convicted, following a non-jury trial, of rape (18 Pa.C.S.
§ 3121(a)(1)), unlawful contact with a minor (18 Pa.C.S. § 6318(a)(1)),
unlawful restraint — serious bodily injury (18 Pa.C.S. § 2902(a)(1)), sexual
assault (18 Pa.C.S. § 3124.1), endangering the welfare of a child (18 Pa.C.S.
§ 4304(a)(1)), and corruption of a minor (18 Pa.C.S. § 6301(a)(1)(i)). On
appeal, Appellant solely challenges the sufficiency of the evidence to sustain
his convictions.

The trial court set forth the following summary of the evidence
presented at Appellant's trial:

> At the time of trial, the victim, N.H., was sixteen (16) years old.
> When she was five (5) years old[,] her father died. About a year
> later, N.H. began living with her paternal grandmother

[(hereinafter, "Grandmother")]....[2] [J.G.] is the mother of N.H.[,] and G.G., who is N.H.'s younger half-sister. Appellant resides with [J.G.] and has been in a relationship with her for approximately ten (10) years.

[2] [Grandmother] testified that N.H. began living with her when she was seven (7) years old.

N.H. testified that up until age thirteen (13)[,] she had regular visits with [J.G.] at her Swissvale home. N.H. described that generally she stayed with [J.G.] for a week every month and that Appellant was often present. During these visits, Appellant was in charge of both N.H. and G.G. if [J.G.] was not home. N.H. testified she did not have her own bedroom or a bed at [J.G.'s] house, so she either slept on a couch or shared a bed with G.G.

At trial, N.H. detailed an incident that occurred during her last week[-]long visit at [J.G.'s] house. She was thirteen and [J.G.], G.G., and Appellant were all at the house. It was nighttime and she was in G.G.'s bed alone, with the lights off and the door cracked open. N.H. was on her phone, lying on her back on top of the covers, dressed in a t-shirt and shorts when Appellant entered wearing only boxer shorts. Without speaking, Appellant grabbed her by the wrists and spread her legs open using his knee. N.H. was scared and did not understand what was happening as Appellant pulled her shorts and underwear down to her ankles. Appellant then removed his penis from his boxers and penetrated her vagina and was moving for a couple of minutes. When he stopped, Appellant spoke for the first time and told N.H., "[d]on't say shit."

N.H. called [Grandmother] the next day and asked if she would pick her up under the guise that she missed her pets. [Grandmother] picked her up that day and N.H. left without telling [J.G.] what happened. Sometime after she returned home, [Grandmother] took N.H. to see a doctor because she was experiencing pain when she urinated and had a vaginal rash. She had multiple follow-up appointments for continued pain. She eventually disclosed that Appellant had touched her sexually because she needed help to feel better.

Dr. Adelaide Eichman, an expert in the field of pediatric medicine and child abuse, testified about the medical examinations and care N.H. received between September 23, 2021[,] and October 18, 2021[,] at UPMC medical facilities. On September 23, 2021, thirteen (13) year old N.H. reported to the emergency room

experiencing inguinal pain, *i.e.*[,] pain in the genital urinary area. At this time, N.H. denied that Appellant touched her[,] but maintained that he made her feel uncomfortable. Based on continuing symptoms, N.H. sought follow-up care through her primary care physician in early October of 2021. Notable findings from her October examination included swelling, pain, and a rash of her labia with a diagnosis of a urinary tract infection, pelvic inflammatory disease, and herpes type 1. During this visit, N.H. disclosed that Appellant, her mother's boyfriend, had been sexually abusing her. The medical records revealed that in the (2) weeks leading up to September 23, 2021, N.H. had been staying with [J.G.] but otherwise resided with … [G]randmother.

On October 18, 2021, during a gynecological exam, the practitioner noted lacerations to N.H.'s hymen indicating penetrative trauma consistent with penile-vaginal penetration. Dr. Eichman testified these findings were significant, not only because of the nature and severity of the injury, but because it is much more common to have a normal exam even when there is a disclosure of sexual abuse. A review of N.H.'s prior medical history did not indicate any prior genital lesions or oral cold sores. At the October exam[,] no bruising was noted to N.H.'s neck, breasts, thighs, or genitalia, which can be present in relation to sexual abuse.

Dr. Eichman explained that herpes is a lifelong disease with no cure. An infected person may not experience a systematic outbreak, or upon infection could present with symptoms within a few days to weeks or possibly longer. Symptoms, which can be managed with medication, include a painful vesicular rash similar to blisters. N.H.'s diagnosis of pelvic inflammatory disease is also indicative of sexual activity as it occurs when bacteria enters a female's reproductive organs. This can result in serious abdominal and/or ovarian infections. After a complete review of her medical history couple[d] with her disclosure, N.H. was diagnosed as having been sexually abused.

These medical records also revealed that [J.G.] was not present for N.H.'s medical examinations. However, additional records show that [J.G.] brought G.G., then age five (5)[,] to rule out any abuse of her. These same records indicate that [J.G.] rejected the allegation and medical finding that N.H. had been sexually abused. [J.G.] echoed this at trial.

- 3 -

[Grandmother] testified that she became N.H.'s primary caregiver at age seven (7) after Children Youth and Family (CYF) legally placed N.H with her. She facilitated a relationship between N.H. and [J.G.] with visits that she explained were not structured regularly but included stays that lasted around a week. [Grandmother] testified that the last time N.H. stayed with [J.G.] was three (3) years ago. N.H. had been there a little over a week and called [Grandmother] to tell her that she missed her cat and dog and [asked Grandmother] to pick her up from [J.G.] house. On the drive home, N.H. told [Grandmother] that Appellant had been looking at her while she was in the bathroom. A few days later, N.H. was crying and complained to [Grandmother] about a burning feeling between her legs. [Grandmother] brought N.H. to Children's Hospital but the pain continued. [Grandmother] ended up taking N.H. to numerous follow-up appointments that led to a diagnosis of herpes on October 6, 2021. It was at this last medical appointment that N.H. underwent a gynecological exam and disclosed that Appellant had sexually touched her with both his hand and his penis.

[Grandmother] explained that, in part because of COVID, N.H. "never left the house" and did not engage in activities outside the home. N.H.'s sole interactions were with friends over the internet and N.H. did not have any friends that came to the house nor did she ever go to their house. Moreover, N.H. did not have a boyfriend and to her knowledge was not sexually active. Consequently, when [Grandmother] learned N.H. had been diagnosed with a sexually transmitted disease[,] she called the police.

[J.G.] testified as a witness for both the Commonwealth and Appellant. She confirmed her relationship with Appellant and described a "very good" relationship not only between N.H. and herself, but also between N.H. and Appellant. She explained that because N.H. does not have a bedroom at her home, when she stays overnight[,] she shares a queen-sized bed with G.G. When discussing Appellant's involvement with the children, [J.G.] initially claimed that in the ten (10) years she has lived with Appellant[,] he was never left in charge of either N.H. or G.G. She clarified in later testimony that the children have been alone with him in the house for short periods of time. [J.G.] continued that she does not believe N.H. and has never observed any type of sexual[ly] inappropriate behavior or conduct between Appellant and N.H.

[J.G.] testified that she only became aware of the allegations and N.H.'s diagnosis of herpes when a CYF caseworker came to her home. Then on October 7, 2021, she testified that police seized bedding from G.G.'s bed, which admittedly had been washed after N.H. left her home in late September. It was subsequently forensically tested, and it was stipulated that the results were negative for semen and the samples were not eligible for further DNA testing.

When questioned by Appellant's counsel, [J.G.] stated that Appellant does not have any noticeable rashes on his genital area. Additionally, she claimed she does not have herpes, although the medical records she provided did not indicate she had been tested for herpes, only other sexually transmitted diseases.

Allegheny County Police Detective Corinne Orchowski was called by Appellant and questioned about discrepancies between information contained in the affidavit of probable cause and the testimony of N.H. Specifically, that when interviewed, N.H. did not report to Detective Orchowski that Appellant touched her buttock on one (1) [prior] occasion, that he removed his penis from his boxer shorts, or that he said "don't say shit" after the rape. Detective Orchowski also testified that as part of her investigation she spoke to Appellant. Appellant denied touching or engaging in sexual intercourse with N.H., and denied having herpes. Appellant also voluntarily provided a DNA sample.

Trial Court Opinion (TCO), 4/29/25, at 3-9 (citations to the record omitted).

After a two-day, non-jury trial, the court convicted Appellant of the above-stated offenses. On August 29, 2024, Appellant was sentenced to the aggregate term of incarceration and probation set forth *supra*. He filed a timely post-sentence motion. After being granted extensions of time to file supplemental post-sentence motions (which Appellant ultimately never filed), the court denied Appellant's request for post-sentence relief on December 17, 2024. He filed a timely notice of appeal, and he and the court complied with Pa.R.A.P. 1925. Herein, Appellant states one issue for our review:

> Whether the trial court erred in finding that the evidence was sufficient to sustain a conviction at counts 1, 2, 3, 5, 6 and 7 of the criminal information in this case, where the allegations made by the alleged victim were uncorroborated by any testimonial, physical or forensic evidence, no direct report was made to authorities within a reasonable time, the time period between the alleged event and any report was such that an independent intervening act is possible, the alleged victim was unable to recall certain specifics, the victim allegedly contracted an incurable sexually-transmitted disease as a result of the purported acts[,] although … Appellant has no such medical issue, and the [victim's] description of the act or acts allegedly engaged in presents a physical impossibility if accepted as true.

Appellant's Brief at 5 (unnecessary capitalization omitted).

Preliminarily, we address the trial court's conclusion that Appellant has waived his sufficiency challenge because his Rule 1925(b) statement

> only refers to the offenses by their count number[,] and then collectively challenges the counts without referencing the names of the offenses or any of the elements that compromise each individual offense. The concise statement does not specify which element, or elements[,] of the offenses[] the Commonwealth's evidence failed to establish. In a multi-count indictment[,] this is wholly inadequate.

TCO at 11 (citing, *inter alia*, **Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013) ("In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.") (internal citation and quotation marks omitted)).

We agree with the trial court. Appellant's Rule 1925(b) statement reads, in pertinent part, as follows:

The [c]ourt erred in finding that the evidence was sufficient to sustain a conviction at Counts 1, 2, 3, 5, 6 and 7 of the Criminal Information in this matter for the reasons indicated at length in the Post-Sentence Motion, particularly insofar as

a. the testimony indicated that [Appellant's] accuser became infected with an incurable, permanent sexually-transmitted disease as a result of sexual contact with [Appellant]; however, neither [Appellant] nor anyone known to have been intimate with [Appellant] suffers from such disease, making the transmission of the same from [Appellant] to the accuser impossible to have occurred;

b. the description of the event upon which the charges were based presents a physical impossibility, to the extent that the positioning of [Appellant] as well as the accuser during the occurrence would have required [Appellant] to have in excess of two (2) hands if the accuser's version of the event is to be credited;

c. the testimony at trial significantly diverged from the testimony elicited at the time of the preliminary hearing in this case, to the degree that the difference in such testimony cannot be reasonably reconciled and thus creates a reasonable doubt; and

d. the event at issue is said to have occurred on September 23, 2021; however, the accusation in this matter was not made until October of 2021, nor did the accuser present for any medical examination prior to that time, leading to a reasonable possibility that an independent, intervening act occurred at some point between the date of the alleged event and the reporting of the same, such that would negate the guilt of [Appellant] in its entirety.

Rule 1925(b) Statement, 2/4/25, at 1-2 (unnumbered).

Although Appellant now argues on appeal that he should not have been required to identify any particular element(s) of any specific crime that the

Commonwealth failed to prove, because his overarching "position is that this incident never occurred at all and that the [t]rial [c]ourt erred in finding that it had[,]" he never set forth this assertion in his Rule 1925(b) statement. Appellant's Brief at 24. Instead, he raised the above-stated claims and left the trial court to guess at which element(s) of which conviction(s) he was alleging that the Commonwealth failed to prove. As Appellant recognizes, "this Court may find waiver where a concise statement is too vague. When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Id.* at 16 (quoting *In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) (internal citation and quotation marks omitted)).[1]

Alternatively, even if Appellant's sufficiency claim was not waived based on his deficient Rule 1925(b) statement, we would deem it waived because

_____

[1] We also reject Appellant's legally unsupported argument that, because the court sat as the fact-finder in this case, it should have been able to discern *any* claim he sought to raise, no matter how vague, unless it was "a unique and novel issue of first impression…." *Id.* at 17. Moreover, contrary to Appellant's suggestion, we find no abuse of discretion in the court's decision not to permit him to file a second, compliant Rule 1925(b) statement, rather than deeming his issues waived. *Id.* at 18. In the case relied upon by Appellant to support this argument, *Ryan v. Johnson*, 564 A.2d 1237 (Pa. 1989), the trial court stated that, "[w]hen one seeking to appeal *has no basis in the record to discern the basis for the order being challenged*, [Rule] 1925(b) must not be employed as a trap to defeat appellate review, requiring specifically stated challenges to the resolution of issues before there has been any revelation as to how the issues have been resolved." *Id.* at 1239 (emphasis added). Clearly, here, Appellant knew each offense for which he was convicted, and the elements thereof, and could have specified how the evidence was insufficient to prove them in his Rule 1925(b) statement. His failure to do so is not comparable to *Ryan*.

his arguments are clearly attacking N.H.'s credibility, which are challenges to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) (stating that "credibility determinations are made by the fact finder and that challenges thereto go to the weight, and not the sufficiency, of the evidence"). We will not review a sufficiency claim where the argument in support thereof goes to the weight, not the sufficiency of the evidence. *See Commonwealth v. Sherwood*, 982 A.2d 483, 492 (Pa. 2009) (citing *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (stating that an appellate court will not review sufficiency claim where argument in support of claim goes to weight, not sufficiency, of the evidence); *Commonwealth v. Mack*, 850 A.2d. 690, 693 (Pa. Super. 2004) (providing no relief where the appellant alleged sufficiency but argued a weight claim; the weight issue was reserved for the fact-finder below)). Moreover, as the trial court observed, Appellant did not raise a weight-of-the-evidence claim in his post-sentence motion, thus waiving it for our review on this basis, as well. *See* TCO at 13 (citing Pa.R.Crim.P. 607).

In any event, even if not waived — and even if properly considered as a sufficiency challenge — we would conclude that no relief is due. Initially, we observe that,

> [w]hether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*, and our scope of review is plenary. In conducting our inquiry, we examine[,]
>
>> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable

to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021) (cleaned up).

Here, Appellant contends that N.H.'s testimony was incredible for various reasons, which we address in turn. First, Appellant stresses that Dr. Eichman testified that N.H. had no bruising to certain areas of her body that would be indicative of sexual abuse. Appellant's Brief at 26-27 (quoting N.T. Trial, 3/11/24-3/12/24, at 44-45). Thus, Appellant claims that, "while [N.H.] may or may not have had intercourse, the only definitive evidence that anything occurred involving … Appellant was [her] statement." *Id.* at 27.

In rendering its verdict, the trial court acknowledged that, although "there appear[ed] to have been no other bruising or other injuries" suffered by N.H., this fact was not "inconsistent with these types of situations, particularly when … the medical examination that would have looked for these types of injuries[] didn't occur for several weeks after the contact." N.T. Trial at 271. Thus, the court did not find that the lack of bruising on N.H.'s body,

weeks after the assault, cast doubt on the credibility of her claim that Appellant raped her. The court, acting as the fact-finder, was free to make this credibility determination.

Next, Appellant asserts that there was "no proof whatsoever that … Appellant transmitted a disease to [N.H.]" Appellant's Brief at 28. He points out that the trial court, in reaching its verdict, stated:

> [The Court:] It is unclear to the [c]ourt what to make of the issue surrounding herpes. It is inconclusive at best whether [Appellant] has herpes, is a carrier, has carried the disease and was unaware of it, which was testified can happen by [Dr.] Eichman. Quite frankly, the fact that she has herpes is indicative of the fact that she had sexual contact with someone.

N.T. Trial at 270. Appellant suggests that the court's statement that N.H.'s herpes diagnosis indicates she "had sexual contact with someone," and the lack of evidence that **he has herpes**, was sufficient proof that the person N.H. had sex with was not him.

However, Appellant conveniently omits the following statements by the court, made immediately after its above-quoted remarks:

> [The Court:] [N.H.'s] testimony, and the testimony I believe credibly of her grandmother that explains the nature and the relationship between the parties[,] and the fact that she had penetrative trauma in her vaginal area, is consistent with an adult male that would have had contact with her in this [c]ourt's opinion of what the evidence shows.

*Id.* The court also noted that N.H. "had little to no contact with other individuals outside of family members and possibly going to school[,]" and "[t]he one male who seemed to have the most contact with her would have

- 11 -

been [Appellant] when she would go and stay at various times with him and with her mother." *Id.* at 269.

Given this record, it is apparent that the court found credible N.H.'s testimony that Appellant raped her, which was supported by the medical and circumstantial evidence that an adult man had sexually assaulted N.H., and Appellant was the primary, adult male who had the most contact with her. We discern no error in the court's credibility determination, even though there was no definitive proof that Appellant has herpes. As the Commonwealth stresses, "Dr. Eichman made [it] quite clear at trial that a) many people have herpes without knowing it because they do not display any outward symptoms of the disease, and b) such a person can, in fact, pass the disease onto another person through sexual intercourse." Commonwealth's Brief at 17 (citing N.T. Trial at 30). Thus, we agree with the Commonwealth that "because there was no evidence presented at trial that definitively established that [Appellant] does **not** have herpes[,] it is of no moment whether or not [Appellant] has ever shown any outward signs of the disease, as the absence of such symptoms certainly would not contradict N.H.'s assertion that [Appellant] sexually assaulted her." *Id.* at 17-18 (emphasis in original).

In Appellant's next attack on N.H.'s credibility, he claims that she "provided numerous contradictory statements, failed to recall even basic facts, and otherwise set forth something less than solid, intractable recitations of the event which allegedly took place and gave rise to the charges and conviction[s]." Appellant's Brief at 29. More specifically, he cites an alleged

contradiction in N.H.'s testimony about "the time period when the incident allegedly occurred…." *Id.* However, as the Commonwealth correctly points out, in the portion of the record Appellant cites, N.H. was being asked about an "**entirely different event** than the one for which he was charged." Commonwealth's Brief at 18 (emphasis in original).

Specifically, in the testimony cited by Appellant, N.H. testified that Appellant had "touched [her] once before" on her buttocks when she was eight years old, but she was confronted with the fact that she had previously testified that this incident had occurred when she was 12. N.T. Trial at 94-95. N.H. said that she testified she was eight because she "was confused" by the question, and she then reiterated her testimony that she had been 12. *Id.* at 96-97. We view this as a minor inconsistency in N.H.'s testimony that she explained by stating she was confused, and which regarded an incident for which Appellant was not even charged or on trial. It was within the province of the court, sitting as the fact-finder, to resolve this discrepancy when assessing N.H.'s overall credibility. *See Commonwealth v. Simmons*, 662 A.2d 621, 630 (Pa. 1995) ("After examining the evidence in this case, we find that [the] appellant's assertion that the inconsistencies in the witnesses' testimony rendered them incredible to have no merit since the inaccuracies claimed are only minor and a witness's credibility is solely for the [fact-finder] to determine.").

Appellant also claims that N.H. was incredible because she "was unable to provide unwavering testimony" about whether he was even "in the

residence when the alleged event occurred." Appellant's Brief at 32. In support, he cites the following exchange during the direct-examination testimony of N.H.:

> [The Commonwealth:] Besides the doctor, did you tell anyone about this -- did you tell anyone in your family about [Appellant's] having inappropriate contact with you?
>
> [N.H.:] I told my grandma and I didn't tell her directly, I told her that he looked at me in the bathroom.
>
> [The Commonwealth:] Had [Appellant] done that?
>
> [N.H.:] Yes.
>
> [The Commonwealth:] Tell us about that, when did that happen?
>
> [N.H.:] **It was about two days before he had touched me physically.** I was in the bathroom. I was about to use the toilet. When I turned around, he was there and quickly went into my mom's room.
>
> [The Commonwealth:] Was his body inside or outside of the bathroom?
>
> [N.H.:] Outside.
>
> [The Commonwealth:] You told your grandma that?
>
> [N.H.:] Yes.
>
> [The Commonwealth:] Did you tell her in person or on the phone?
>
> [N.H.:] On the phone and **she came and got me the next day**.

*Id.* (quoting N.T. Trial at 85) (italicized emphasis omitted; bold emphasis added).

Based on the above-emphasized language, Appellant claims that N.H. "left her mother's home the following day" after Appellant looked at her in the

bathroom and, thus, the assault could not have taken place "two days later during the same visitation period." *Id.* at 33.

In response, the Commonwealth contends that another, "quite obvious" interpretation of N.H.'s testimony is "that two days before the rape, [Appellant] looked at her inappropriately in the bathroom and that the day after the rape — not the day after the bathroom incident — she called her grandmother to pick her up." Commonwealth's Brief at 21. Viewing N.H.'s testimony in the light most favorable to the Commonwealth, as the verdict winner, we agree that its interpretation of her testimony is reasonable. Ultimately, it was for the court, as the fact-finder, to determine the meaning and credibility of this evidence.

Finally, Appellant contends that N.H. exhibited "selective memory loss" when she was unable to recall a stripe that was on a couch in her mother's home, which "she had visited for many years." Appellant's Brief at 33. N.H. was also shown a photograph of a door in her mother's house, and could not state what the door was or whether anything was hanging on either side of it. *Id.* at 34 (citing N.T. Trial at 82-83). Appellant claims that these memory issues cast doubt on N.H.'s overall credibility. Again, we disagree. Minor credibility issues such as these are solely within the province of the fact-finder to resolve. *See Simmons*, 662 A.2d at 630.

In sum, viewing the record in the light most favorable to the Commonwealth, as the verdict winner, we would reject Appellant's argument that there was "a complete failure of proof with respect to the very first — and

most indispensable — element of every offense charged, namely, that …

Appellant actually committed the offenses." Appellant's Brief at 35. N.H.

testified about the assault, and the court found her testimony to be credible.

*See* N.T. Trial at 271. "This Court has long-recognized that the

uncorroborated testimony of a sexual assault victim, if believed by the trier of

fact, is sufficient to convict a defendant, despite contrary evidence from

defense witnesses." ***Commonwealth v. Charlton***, 902 A.2d 554, 562 (Pa.

Super. 2006) (cleaned up). N.H.'s testimony was supported by the medical

evidence of her penetrative trauma and other injuries indicative of sexual

assault, and the circumstantial evidence that Appellant was the sole adult

male who had significant access to N.H. during the time-period when the

assault occurred. Given this record, had we reached the merits of Appellant's

claim, we would have concluded that the evidence was sufficient to prove that

Appellant committed the crimes for which he was convicted.

Judgment of sentence affirmed.

President Judge Emeritus Panella joins this memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/6/2025